Catherine B. NOLLENBERGER et al., Plaintiffs,

v.

UNITED AIR LINES, INC., a corporation, Defendant.

Pernita C. THOMPSON et al., Plaintiffs,

v.

UNITED AIR LINES, INC., a corporation, Defendant.

Myrtle C. THEOBALD et al., Plaintiffs,

v.

UNITED AIR LINES, INC., a corporation, Defendant.

Marjorie I. MATLOCK et al., Plaintiffs,

v.

UNITED AIR LINES, INC., a corporation, Defendant.

Nos. 62-1600 to 62-1602, 62-1606.

United States District Court
S. D. California,
Central Division.
April 12, 1963.

Ben Margolis, and Robert G. Johnson, Los Angeles, Cal., for plaintiffs.

Hugh B. Rotchford and James J. McCarthy, Los Angeles, Cal., for United Air Lines.

HALL, Chief Judge.

The within cases are wrongful death actions arising out of the same mid-air collision described in the Opinions dated November 14, 1962, and December 7, 1962, and found in United States v. United Air Lines, Inc., D.C., 216 F.Supp. 709, to which reference is made for more detail.

As will be seen from the above-mentioned Opinion of November 14, 1962, the Court consolidated the Nollenberger case with the Matlock, Theobald, Thompson, Klehfoth and Paris cases in the District of Nevada for joint trial to one jury on both the question of liability and damages. By the same Order, the Cross-claims of the United States against United Air Lines and the Cross-claims of United Air Lines against the United States were severed for trial from the claims of the individual plaintiffs against United Air Lines.

On December 5, 1962, the Court, after argument on motions of the plaintiffs, indicated that it would grant summary judgment, in the consolidated cases, against United Air Lines on the question of liability only, as is further seen from the above-mentioned Opinion of December 7, 1962.

Thereafter, and on December 10, 1962, counsel stipulated for a change of venue for the trial of the issue of damages, from the District of Nevada to the Southern District of California, Central Division, in the Nollenberger, Matlock, Theobald, Thompson, Pebles, Paris and Darmody cases.[1]

In the Pebles and Darmody cases, pending against United Air Lines only, the parties stipulated to the amount of a judgment, reserving all rights on appeal.

The Court then proceeded to try the Paris, Nollenberger, Matlock, Theobald and Thompson cases in the Southern District of California to a single jury, in that order, receiving a verdict in each case before proceeding with the next case.[2]

The matters now before the court are the motions of the plaintiffs in the Nollenberger, Thompson, Theobald and Matlock cases[3] for relief under the provi-

[1]. The Blackwelder case, in which both the United States and the United Air Lines were defendants, was settled by stipulation and order approved by the Court on December 28, 1962, and was not transferred to the Southern District of California.

[2]. In each of the cases in which a jury verdict was returned, and on motion for summary judgment against United Air Lines on the question of liability, and on motion for judgment of dismissal of the claim of United Air Lines against the United States, the Court directed the Clerk to withhold entry of judgment in order that at the conclusion of all of the cases, judgments could be entered simultaneously so that a uniform time to appeal would apply to each case.

[3]. No motion for new trial has as yet been made in the Paris case, and the fact that motion for new trial has not been filed is no indication of the abandonment by either the plaintiff or the defendant of their right to file a motion for new trial. The jury returned a general verdict in the sum of $150,000 general damages and $850 special damages for the wrongful death of Captain F. C. Paris who was a Captain in the United States Air Force. No special interrogatories were utilized in that case.

sions of F.R.Civ.P., rule 49(b) [4] which was utilized for the purpose of submitting special interrogatories and a general verdict to the jury in each of those four cases.

There is also before the Court the Motion of defendant United Air Lines to strike the affidavit of Chapin which plaintiffs filed in support of their motions.

The plaintiffs (except Paris) originally filed a motion for new trial only, on the following grounds:

(1) Insufficiency of the evidence to justify the judgment;

(2) Inadequate damages contrary to the evidence; and

(3) Inconsistency of the general verdict with the special verdict.

Thereafter, at the conclusion of the trial of all five of the cases, the plaintiffs renewed their motion on the same grounds in the Nollenberger, Matlock, Theobald and Thompson cases, but moved, in the alternate, for one of three procedures:

(1) That the Court submit additional interrogatories to the jury;

(2) That the Court calculate the general damages from the answers to the special interrogatories and enter judgment for such sum; or

(3) That the Court grant a new trial.

By the express terms of Rule 49(b), F.R.Civ.P., where the special findings of fact in response to special interrogatories are consistent with each other

but one or more is inconsistent with the general verdict, "the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict or may return the jury for further consideration of its answers and verdict or may order a new trial."

The procedures authorized by the rule are not new. Examples of the use of such procedures before the promulgation of the Federal Rules of Civil Procedure in 1938, and while the Conformity Act was in effect, are found in: Prentice v. Zane's Administrator (1850), 8 How. [49 U.S.] 470–483, 12 L.Ed. 1160; Graham v. Bayne (1855) 18 How. [59 U.S.] 60, 63, 15 L.Ed. 265; United States v. Pinover (D.C., 1880) 3 F. 305; Spokane & I. E. R. Co. v. Campbell (C.C.A.9, 1914) 217 F. 518, aff'd 241 U.S. 497, 36 S.Ct. 683, 60 L.Ed. 1125; United States v. McPhee (C.C.A.9, 1929) 31 F.2d 243.

■ There can be no question of the constitutionality of the rule or in following any one of the alternate procedures set out by it in view of Walker v. New Mexico & So. Pacific R. R. Co., (1897) 165 U.S. 593, 17 S.Ct. 421, 41 L.Ed. 837, which held that a statute of the then Territory of New Mexico containing similar provisions did not contravene the Seventh Amendment to the United States Constitution. The Court, inter alia, stated, at page 597, 17 S.Ct. at page 422: "It would certainly startle the profession to be told that such statutes contravene a constitutional requirement of the inviolability of jury trials."

**4.** "Rule 49(b) *General Verdict Accompanied by Answer to Interrogatories.* The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the

verdict and answers. When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict or may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers and verdict or may order a new trial."

■ As stated by the Court of Appeals of the Ninth Circuit in Pacific Greyhound Lines v. Zane et al. (1947) 160 F.2d 731–737, Rule 49, F.R.Civ.P., was "designed to encourage and facilitate the use of the special verdict, or, in the alternative, the general verdict accompanied by the jury's answers to interrogatories as to issues of fact."

In short, the rule is designed to take some of the mystery out of general verdicts where, in case after case, neither counsel for either side nor the Court have been able to reconcile the verdict with the evidence. That was the purpose of the use of interrogatories in these cases.

■■ The first task of the Court is to determine whether or not the Findings of Fact in the answers, given by the jury to the special interrogatories, are consistent with each other and whether one or more, if consistent with each other, are inconsistent with the general verdict fixing the total sum of damages to the plaintiffs resulting from the death of the decedent. And in doing so, Gallick v. Baltimore & Ohio R. R. Co., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), "it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them: 'Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.' Atlantic & Gulf Stevedores, Inc., v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798. We therefore must attempt to reconcile the jury's findings, by exegesis if necessary, as in Arnold v. Panhandle & S. F. R. Co., 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed. 2d 889; McVey v. Phillips Petroleum Co., 288 F.2d 53 (C.A.5th Cir.); Morris v. Pennsylvania R. Co., 187 F.2d 837 (C.A.2d Cir.) (collecting authorities), before we are free to disregard the jury's special verdict and remand the case for new trial."

· The Ninth Circuit has stated it thusly in Golden North Airways v. Tanana Publishing Company (1954) 218 F.2d 612, at 618, 15 Alaska 303, where it said: "It is also the rule that if the special verdict or special findings can be reconciled with the general verdict, the court should do so."

The text of the special verdict on damages in the Nollenberger case is as follows:

"We, the Jury in the above entitled case, unanimously find as follows:

| QUESTIONS | ANSWERS |
|---|---|
| 1. Which one of the following named persons, viz.: William Edward Nollenberger, 45 years of age on April 21, 1958; Catherine B. Nollenberger, his widow, age 47 on April 21, 1958; William Edward Nollenberger, Jr., son, age 20 on April 21, 1958; Lawrence P. Nollenberger, son, age 11 on April 21, 1958; had the shortest life expectancy? | Wm. E. Nollenberger <br> (Name) |
| 2. How many years was that life expectancy on April 21, 1958? | 25 <br> (Total number of years) |
| 3. How many years was decedent's work and earning expectancy from and after April 21, 1958? | 15 yrs <br> (Total number of years) |

| QUESTIONS | ANSWERS |
|---|---|

4. From and after April 21, 1958, what total sum of money do you find the decedent would have earned during the period of his work and earning expectancy stated in your answer to No. 3 above?

$235,210
(Total)

5. From and after the end of his work and earning expectancy, and during the remainder of his life, if any such remained, what total sum of money do you find decedent would have received as a result of his government employment?

$100,200
(Total sum)

6. What is the total reasonable value of services susceptible of being furnished by others which you find it was reasonably probable that decedent would have provided under my instructions to you to the plaintiffs during his lifetime?

$25,000
(Total value)

7. What percentage of his annual earnings, had he lived, from and after April 21, 1958, would have been used by decedent for his own personal expenses which were eliminated by his death?

25%
(Percentage of annual earnings)

8. What percentage of his income would be paid as annual income tax had he lived after April 21, 1958?

15%

9. What percentage of the income from the award will be paid by plaintiffs as income tax?

11%

10. In determining the present reasonable value of services as defined in No. 6 above, what annual rate of inflation, if any, do you find should be allowed?

1%

11. What discount rate should be applied in arriving at the total sum of general damages?

4%
(Discount rate)

12. What sum of money do you find plaintiffs' general damages to be which you assess against Defendant United Air Lines?

$114,655.00

DATED: At Los Angeles, California, January 16, 1963.

S/ Burford A. Reynold
Foreman"

■ The answers to the Special Interrogatories No. 1 to No. 11 are plainly consistent with each other and are amply supported by the evidence.

But, in repeated efforts to "harmonize" and "reconcile" the answers to the 11 special interrogatories with the general verdict of $114,655.00, I have been unable to do so. And hence I must and do conclude that they are not harmonious or reconcilable.

While Rule 49(b) F.R.Civ.P., under such circumstances permits, as one of three alternatives, the Court to re-submit the matter to the jury for further consideration, the plaintiffs desire the Court to go further and to submit additional interrogatories along the lines of the additional interrogatories submitted in the Theobald and Thompson cases. While there is historical precedent for interrogating the jury after a general verdict [Walker v. New Mexico & So. Pacific R. R. Co. (1897) 165 U.S. 593, 595, at 597, 17 S.Ct. 421, at 422, 41 L.Ed. 837, and cases there cited; Rockefeller v. Wedge (3 Cir. 1906) 149 F. 130] I am constrained to think, in view of the fact that Walker v. New Mexico & So. Pacific R. R. Co., was cited in the note to Rule 49(b) by the Advisory Committee on Rules for Civil Procedure, which formulated the Rules, that had it been the intention to permit *additional interrogatories* to be submitted *after* the general verdict and answers to the special interrogatories submitted with the verdict, the rule would have so provided, and the rule would not have contained the restrictive language of the second sentence of Rule 49(b) that the Court " * * * shall direct the jury both to make written answers and to render a general verdict," or the language in the fourth sentence of Rule 49(b) (applicable here) that the Court, as one alternative, " * * * may return the jury for *further consideration of its answers and verdict."*

It could be argued from the portion of the rule last quoted that if that procedure were followed the jury could change both its answers and general verdict, or only the answers and not the general ver-

dict. If such were true, it appears to me it would only lead to greater confusion. That such action by the jury was not intended by the Rule is evidenced from the citation in the note to Rule 49 by the Advisory Committee of the case of Victor-American Fuel Co. v. Peccarich (C.C. A.1913) 209 F. 568, cert. den. 232 U.S. 727, 34 S.Ct. 603, 58 L.Ed. 817. In that case the Court stated, at page 571: " * * * these special findings must control when they clearly compel a different judgment from that which would follow the general verdict," and as authority for that proposition cited Walker v. New Mexico & So. Pacific R. R. Co., supra, among others, which states the same proposition in 165 U.S. at page 598, 17 S.Ct. at page 422.

Counsel cite Momand v. Universal Film Co. (D.C.Mass.1947) 72 F.Supp. 469 [Aff'd without discussion of the point in 172 F.2d 37, cert. den. 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118, reh. den. 337 U.S. 934, 961, 69 S.Ct. 1493, 1529, 93 L.Ed. 1740, 1760] for the proposition that additional interrogatories may be submitted after a general verdict. But the record as to what procedure was actually followed is not clear enough in that case to be authoritative.

Rockefeller v. Wedge (C.C.A.3, 1906) 149 F. 130 was a suit on a promissory note. The defenses of misrepresentation and cancellation were submitted on two special interrogatories with a general verdict. The jury found for the defendant in its general verdict, but apparently for the plaintiff on the issue of misrepresentation, so that there was inconsistency between one special answer and the general verdict. *At the time the verdict was rendered,* the jury, upon inquiry from the Court, put its general verdict on the second ground, viz: cancellation. The Court stated at page 132:

"The practice of calling on jurors to specialize their verdict in the way that was done is furthermore deprecated, and the right of the court to do so is challenged. But the right to interrogate a jury, and to act upon their findings, is directly sus-

tained in Walker v. [New Mexico &] Southern Pacific R. R. [Co.], 165 U.S. 593, 597, 17 Sup.Ct. 421, 41 L.Ed. 837, and City of Elizabeth v. Fitzgerald, 114 Fed. 547, 52 C.C.A. 321, and does not need to be vindicated here. And, far from being open to the criticism made of it, if it were oftener resorted to, it would save not a few mistrials; many rulings to which objection could otherwise be justly made being eliminated and rendered harmless. Clementsen on Special Verdicts, 95, 286; 4 Mich. Law Rev. 493."

In the other cases turned up, the Court has accepted the answers as correct, and either increased or reduced the general verdict.

In Kowtko v. Delaware and Hudson R. R. Corp. (D.C.M.D.Pa.1955) 131 F. Supp. 95, 11 interrogatories were submitted to a jury in a grade-crossing death case under the Wrongful Death and Survival Acts of Pennsylvania. Apparently all of the interrogatories related to liability, and all were answered in plaintiff's favor. The court nonetheless reduced the general verdict because not in conformity with the answers, and the evidence.

Hudson Rug Refinishing & Cleaning Corp. v. Prime (C.C.A.7, 1940) 115 F. 2d 615, was a case which stated that the interrogatories were submitted under F.R.Civ.P. 49(a) but which nevertheless appear to have been submitted under F.R.Civ.P. 49(b) for the reason that the jury answered certain special interrogatories and found a total sum of damages. The Appellate Court affirmed the action of the Trial Court in increasing the total sum of damages, basing its action on the answers to the special interrogatories.

Wayne v. New York Life Ins. Co. (C. C.A.8, 1942) 132 F.2d 28, was a case involving disability benefits sought under a life insurance policy. Five special interrogatories were submitted under Rule 49(b). The Jury answered four in such a way that answer to the fifth was unnecessary, and gave judgment for the plaintiff. The plaintiff thereafter filed

a motion to enter judgment in conformity to the Jury's answers to the special interrogatories, which motion was denied by the District Court. The Court of Appeals held that there was inconsistency between the general verdict and the interrogatories, and modified the general verdict to conform to the answers to the interrogatories.

Shaffer v. Great American Indemnity Co. (C.C.A.5, 1945) 147 F.2d 981, was a case arising under the Workmen's Compensation Laws of Texas. The court submitted special interrogatories to the Jury under Rule 49. It is not clear whether the interrogatories were under Subdivision (a) or Subdivision (b), but in any event, the Court of Appeals reversed the judgment, remanded the case to the District Court with directions to correct the verdict in accordance with the answers to the special interrogatories.

United States v. City of Jacksonville, Arkansas (C.C.A.8, 1958) 257 F.2d 330, was an action in eminent domain. In that case the court submitted two interrogatories and a general verdict, and held that the answer to the interrogatory No. 2 was inconsistent with the general verdict, and remanded the case to the Trial Court with directions to enter judgment in accordance with the answers to the special interrogatories and for a different sum than was found in the general verdict.

McVey v. Phillips Petroleum Company (5 Cir. 1961) 288 F.2d 53, was a negligence action wherein special interrogatories were submitted, and also general interrogatories. The general interrogatories found the dollar sum of damages, but the Trial Court found the answers to be inconsistent with each other and with the general verdict, and entered judgment in accordance with some of the special interrogatories.

Morris v. Pennsylvania R. R. Co. (2 Cir. 1951) 187 F.2d 837, was a death case wherein eleven special interrogatories and a general verdict were used under F.R.Civ.P. 49(b). The court held there was no inconsistency and sustained the

verdict. The court there observed (page 841) that the often desirable practice permitted by the last two sentences of Rule 49(b) "should be resorted to with discrimination and foresight; it should never be used for mere cross-examination of the jury to create error for the record. Its purpose and best achievement is to enable errors already potential because of confusions of fact or law 'to be localized so that the sound portions of the verdict may be saved.' Sunderland, Verdicts, General and Special, 29 Yale L.J. 253, 259; 34 Ill.L.Rev. 96. It is hence best available, when, as the judge can foresee, the issues can be thus clearly and simply differentiated, to save on appeal at least that portion which cannot be questioned; * * *."

▉▉▉ I conclude (1) that the findings of fact of the jury in answer to special interrogatories control over the general verdict; (2) that it is not within the power of the court under F.R.Civ.P. 49 (b) to submit additional interrogatories after the jury has returned its verdict answering special interrogatories and at the same time returned a general verdict;[5] (3) that in the Nollenberger and Matlock cases the answers to the special interrogatories are consistent with each other and inconsistent with and cannot be reconciled or harmonized with the general verdict; (4) that before granting a new trial, it is the duty of the Court to make calculations from the special interrogatories, and enter a judgment thereon. Which latter, I shall now do.

It is implicit in the answers by the Jury to the interrogatories that each decedent would have remained employed by the Government as a Civil Service employee during the remainder of his work expectancy.

That being so, the salary and in-grade steps of each decedent are and have been governed by Statute, which was explained to the Jury, and the present applicable Statute was read to them. [Salary Act of 1962, 76 Stat. 832, Secs. 701 and 702, 5 U.S.C. §§ 1113, 1121 et seq].

In making the calculations on the answers to the interrogatories, there are five items to be separately evaluated, viz:

▉▉▉ *Item I*—Earnings from date of death to date of trial. Kowtko v. Delaware & Hudson R. R. Corp. (M.D. Pa.1955) 131 F.Supp. 95, at 107, held that such earnings under the Pennsylvania rule should have interest added to date of trial and should not be discounted. There appears to be no Nevada rule on the subject. The rule followed in Kowtko is a just and sensible rule as it prevents punishing the plaintiffs, who are wholly innocent victims of defendant's negligence, by depriving them of interest on money they were entitled to receive on the decedents' deaths, and it prevents rewarding the defendant for delays (five years now in these cases) which have occurred. Evidence and argument were permitted on that basis. The cases were tried in January and February, 1963, and it having been expected that they would be finished in January, 1963, January 1, 1963, was taken, during the trial, as the date nearest to judgment. But no judgment having yet been entered in any of the above cases, and none will be entered until after this decision on plaintiffs' motions, the Court will consider May 1, 1963, the nearest month end (five years after death) as the date of trial and judgment.

A reasonable rate of interest is all that is required. [Chesapeake & Ohio R. R. Co. v. Kelly (1916) 241 U.S. 485 at 490, 36 S.Ct. 630 at 632, 60 L.Ed. 1117]. In view of the finding by the jury in answer to Interrogatory No. 11 that four per cent is the applicable discount rate, that percentum will be applied and added to Item I.

▉▉▉ *Item II*—Earnings for remainder of work expectancy of each decedent from and after May 1, 1963, discounted to present worth at four per cent [Ans. 11].

---

5. I intend to indicate no opinion as to whether or not special interrogatories or inquiry can be made of a jury after only a general verdict is sought and returned.

*Item III*—Pension earnings for the total number of years of life expectancy of each decedent after the end of his work expectancy, discounted to present worth at four per cent [Ans. 11].

*Item IV*—Value of decedent's personal service [Ans. 6] plus one per cent inflation [Ans. 10] discounted to present worth at four per cent [Ans. 11]. Five years having already passed, the damages accrued to date will be calculated as Item IV–A, and the remainder will be discounted from May 1, 1963, as Item IV–B.

■ *Item V*—Total sum to be paid by plaintiffs as income tax on income from award [Ans. 9] discounted to present worth at four per cent [Ans. 11].[5a]

■ *Item I* requires the deduction of personal expenses of each decedent [Ans.

7], the income tax payable by the decedent [Ans. 8] and 6½ per cent of his salary required to be contributed by law toward his pension, before adding interest, compounded annually, to date of trial.

*Item II* requires the same deductions, and the resulting sum must be discounted to its present value [Chesapeake & Ohio R. R. Co. v. Kelly (1916) 241 U.S. 485, at 489–490, 36 S.Ct. 630, at 631–632, 60 L.Ed. 1117] at four per cent [Ans. 11].

■ *Item III* being pension, from which the 6½ per cent contribution is not deductible, would be subject only to the personal expense deduction [Ans. 7] and income tax deduction [Ans. 8].

Neither Item IV nor Item V require any deductions.

## NOLLENBERGER

### ITEM I

Earnings after death to date, i. e. 4/21/58 to 5/1/63 .... $ 60,558.00 [6]
 Minus 25% [Ans. 7], 15% [Ans. 8] and 6½%
contribution to decedents pension, i. e., 46½%, which
leaves 53½% of $60,588 total contribution to family
for above period ................................... $ 32,399.00 [7]
 $32,399 ÷ 5 years equals $6,480 annually;
Interest on each annual total of $6,480, compounded annually at 4% [Ans. 11] from one year after death to
5/1/63 ........................................... $ 2,696.00
 TOTAL OF ITEM I ............... $ 35,095.00

### ITEM II

Answer 4—Total earnings during work expectancy of
15 years [Ans. 3] ............................... $235,210.00
 Minus earnings in five years since death to date
[Item I] ........................................ $ 60,558.00
Earnings during 10 years remainder of work expcy ...... $174,652.00
 Minus 25% [Ans. 7], 15% [Ans. 8] and 6½%
contribution to his pension, i. e. 46½%, leaves 53½% of
$174,652.00 as contribution to family for balance of work
expectancy (120 months) from 5/1/63, viz: ........... $ 93,439.00

---

**5a.** Attached as Appendix I is Instruction R–2, given in each case and as used in the calculations in their opinion.

**6.** Exs. 5 and 12: Salary Acts of 1958, 1960 and 1962; 72 Stats. 203; 74 Stats. 296; 76 Stats. 832; 5 U.S.C. § 1113 et seq. Inasmuch as salary and step increases were fixed by said statutes, it becomes a mere calculation as a matter of law, and in arriving at said sum the court is not substituting its judgment for that of the jury.

**7.** Where cents are less or more than 50, the figures throughout are rounded out to the nearest dollar.

To be discounted to present worth as follows:

$93,439 ÷ 120 equals monthly contribution to family during balance of work expectancy of ........................$ 779.00

Discount factor from Ex. 9 [10 yr. = 99.10] x $779.00 monthly equals — $77,199.00 —

Total of Item II, present worth of $93,439 discounted to present value [779 x 99.10] [8] ......................$ 77,199.00

That is to say, $77,199.00 invested today (May 1, 1963) at four per cent interest will produce $93,439.00 at the rate of $779.00 per month for the next 120 months, at the end of which time both the principle and interest will be exhausted.

## ITEM III

Answer 5—Total pension ..........................$100,200.00

Minus 25% [Ans. 7] and 15% [Ans. 8], i. e., 40% leaving 60% of $100,200 as contribution to family to be discounted to present worth as follows: ..................$ 60,120.00

$60,120.00 divided by 120 months [10 yr. life expectancy after work expectancy, Answers 2 and 3] equals monthly contribution to family ........................$ 501.00

Discount factor [Ex. 9] at 4% [Ans. 11] is 66.95. [Pension not being due until 10 years from now (5/1/63) and payable for ten years, discount factor is secured by subtracting 10 yr. factor of 99.10 from 20 year factor of 166.05, which equals 66.95].

TOTAL ITEM III—501 x 66.95 equals ............$ 33,542.00

That is to say, $33,542.00 invested today (5/1/63) at four per cent will produce $60,120.00 at the rate of $501.00 per month for ten years beginning 10 years from now, at the end of which time both the principle and interest will be exhausted.

## ITEM IV

Total value [Ans. 6] of personal services of decedent to plaintiffs over decedent's life expectancy of 25 years [Ans. 2] ..............................................$ 25,000.00

A — from death to 5/1/63 at $1,000 per year ............$ 5,000.00

Total interest at 4% [Ans. 11] compounded annually on each annual sum of $1,000 from one year after death to 5/1/63, plus 1% inflation [Ans. 10] equals ...........$ 525.00

TOTAL ITEM IV-A ..........................$ 5,525.00

B — Total from 5/1/63 to end of life expectancy which is 20 years [Ans. 2] ....................................$ 20,000.00

Add inflation of 1% per year [Ans. 10] on $1,000 annually for 20 years ........................................$ 2,021.00

To be discounted to present worth at 4% [Ans. 11] ......$ 22,021.00

$22,021 ÷ 240 months equals $91.75 per month.

TOTAL ITEM IV-B — 20 year factor at 4% — 166.057 [Ex. 9] x $92.00 equals ..............................$ 15,277.00

**8.** Ex. 9 which is used in all the discount calculations herein, Appendix II.

That is to say, $15,277.00 invested on May 1, 1963, will produce $22,021.00 at the rate of $92.00 per month over the next 20 years, at which time both principle and interest will be exhausted.

TOTAL ITEMS IV-<u>A</u> and IV-<u>B</u> – $ 20,802.00

## ITEM V

| | |
|---|---|
| ITEM I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 35,095.00 |
| ITEM II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 77,199.00 |
| ITEM III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 33,542.00 |
| ITEM IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 20,802.00 |
| TOTAL . . . . . . . . . . . . . . . . . . . . | $166,638.00 |
| 4% annual income [Ans. 11] . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 6,665.00 |
| 11% annual income tax thereon [Ans. 9] . . . . . . . . . . . . . . | $ 733.00 |
| Monthly requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 61.00 |

$61.00 divided by two because of depleting nature of principle of the fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 30.50

TOTAL OF ITEM V – 20 yr. factor at 4% [Ex. 9] –
166.05 x $30.50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 5,064.00

That is to say, $5,064.00 invested on May 1, 1963 at four per cent per annum will produce $30.50 per month for the next 20 years, at which time both the principle and interest will be exhausted.

SUB-TOTAL OF ITEMS I, II, III and IV . . . . . . . . . $166,638.00
PLUS ITEM V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..$ 5,064.00

TOTAL NOLLENBERGER AWARD . . . . . . . . $171,702.00

The motion of plaintiffs to submit additional interrogatories to the Jury is denied.

The motion for new trial is also denied.

The motion of defendant United Air Lines to strike the affidavit of Chapin is granted.

Counsel for plaintiffs will prepare and submit a judgment under the Rules, in favor of plaintiffs Nollenberger and against defendant United Air Lines for the above sum of $171,702.00.

## MATLOCK

The Interrogatories and Verdict in the Matlock case are as follows: "We, the Jury in the above-entitled case, unanimously find as follows:

| "QUESTIONS | ANSWERS |
|---|---|
| 1. Which one of the following named persons, viz: Charles Dale Matlock, 40 years of age on April 21, 1958; Marjorie I. Matlock, his widow, 38 years of age on April 21, 1958; Mardale Matlock, daughter, 16 years of age on April 21, 1958, had the shortest life expectancy? | Chas. Dale Matlock<br>(Name) |
| 2. How many years was that life expectancy on April 21, 1958? | 30<br>(Number of years) |

746

| "QUESTIONS | ANSWERS |
|---|---|

3. How many years was decedent's work and earning expectancy from and after April 21, 1958?

 20
 (Number of years)

4. From and after April 21, 1958, what total sum of money do you find the decedent would have earned during the period of his work and earning expectancy stated in your answer to No. 3 above?

 319,014
 (Total)

5. From and after the end of his work and earning expectancy, and during the remainder of his life, if any such remained, what total sum of money do you find decedent would have received as a pension paid as a result of his government employment?

 111,120.00
 (Total sum)

6. What is the total reasonable value of services susceptible of being furnished by others which you find it was reasonably probable that decedent would have provided under my instructions to you to the plaintiffs during his lifetime?

 45,000.00
 (Total value)

7. What percentage of his annual earnings, had he lived, from and after April 21, 1958, would have been used by decedent for his own personal expenses which were eliminated by his death?

 25%
 (% of annual earnings)

8. What percentage of his income would be paid as annual income tax had he lived after April 21, 1958?

 16.6

9. What percentage of the income from the award will be paid by plaintiffs as income tax?

 13%

10. In determining the present reasonable value of services as defined in No. 6 above, what annual rate of inflation, if any, do you find should be allowed?

 1%

11. What discount rate should be applied in arriving at the total sum of general damages?

 4%
 (Discount rate)

"QUESTIONS ANSWERS

12. What sum of money do you find plain-
 tiffs' general damages to be which you
 assess against Defendant United Air
 Lines? $157,969.00

DATED: At Los Angeles, California, January 25, 1963.

 Burford A. Reynolds
 _____
 Foreman"

The decedent, Charles Dale Matlock, was a Civil Service employee of the Air Force. The same Statutes fixed his salary and step and grade increases and pension as fixed in the Nollenberger case. [See FN 6, page 15]. The same principles and methods of calculation used in Nollenberger are applicable here.

## ITEM I

Earnings after death to date, i. e., 4/21/58 to 5/1/63 ......$ 54,765.00

Minus 25% [Ans. 7], 16.6% [Ans. 8] and 6½% contribution to pension equals 48.1%, which leaves 51.9% of $54,765.00 as contribution to family for above period ........$ 28,423.00

$28,423 ÷ 5 years equals $5,685 annually.

Interest on each annual total of $5,685 compounded annually at 4% [Ans. 11] from one year after death to 5/1/63 ......$ 2,361.00

 TOTAL OF ITEM I .............$ 30,784.00

## ITEM II

Ans. 4—Total earnings during work expectancy of 20 years [Ans. 3] .................................$319,014.00

Minus earnings in 5 years from death to date, i. e., 4/21/58 to 5/1/63 .................................$ 54,765.00

Earnings during 15 year remainder of work expectancy ...$264,249.00

Minus 25% [Ans. 7], 16.6% [Ans. 8] and 6½% contribution to pension, i. e., 48.1% which leaves 51.9% of $264,249.00 as contribution to family for balance 15 years (180 months) from 5/1/63, viz. ...........................$137,145.00

$137,145.00 ÷ 180 months is monthly contribution to family of ...............................................$ 762.00

15 year factor (Ex. 9) from 5/1/63 at 4% [Ans. 11] is 135.85 x 762.00 equals ...................$103,518.00

 TOTAL OF ITEM II ...........$103,518.00

That is to say, $103,518 invested today (May 1, 1963) at four per cent will produce $137,145, at the rate of $762 per month for the next 15 years, at which time both the principle and the interest will be exhausted.

## ITEM III

Ans. 5—Total pension ...............................$111,120.00

Minus 25% [Ans. 7] and 16.6% [Ans. 8], i. e., 41.6% leaves 58.4% of $111,120.00 as contribution to family ......$ 64,894.00 $64,894 to be discounted to present worth as follows: $64,-894 ÷ 120 months [10 yrs. life expectancy after work expectancy, Ans. 2 and 3] equals monthly contribution to family of ................................................$ 540.00

Discount factor (Ex. 9) at 4% [Ans. 11] is 55.02. [Pension not being due until 15 years from now (5/1/63) and payable for 10 years, discount factor is secured by subtracting 15 year factor of 135.8494 from 25 year factor of 190.8775 (25 yrs. being remainder of life expectancy of decedent) .........................................

TOTAL ITEM III—540 x 55.02 equals ................$ 29,710.80

That is to say, $29,710 invested as of 5/1/63 at four per cent will produce $64,894.00 at the rate of $540.00 per month for a 10 year period beginning 15 years from now, at the end of which time both the principle and the interest will be exhausted.

## ITEM IV

Total value [Ans. 6] of personal services of decedent to plaintiffs over decedent's life expectancy of 30 years [Ans. 2] which averages $1,500 a year .........................$ 45,000.00

A – From death to 5/1/63 at $1,500 (5 yrs) ...........$ 7,500.00

Interest at 4% [Ans. 11] compounded annually on each annual sum of $1,500 from one year after death to 5/1/63, plus 1% inflation [Ans. 10] i. e., 5% equals ......$ 788.00

TOTAL ITEM IV-A ..............$ 8,288.00

B – Total for 25 years from 5/1/63 to end of life expectancy [Ans. 2] i. e., $7,500 for 5 years from death to date subtracted from $45,000 equals .........................$ 37,500.00

Add inflation of 1% per year [Ans. 10] on $1,500 annually for 25 years equals ...........................$ 4,871.00

$ 42,371.00

TOTAL IV-B, present worth of $42,371 at 4% [Ans. 11] for 25 years (300 months) at $141.00 per month x 190.87 [Ex. 9] equals .......................................$ 26,913.00

Plus TOTAL IV-A ..............................$ 8,288.00

TOTAL ITEM IV ..............$ 35,201.00

## ITEM V

| | |
|---|---|
| ITEM I | $ 30,784.00 |
| ITEM II | $103,518.00 |
| ITEM III | $ 29,710.00 |
| ITEM IV | $ 35,201.00 |
| | $199,213.00 |

| | |
|---|---|
| 4% annual income [Ans. 11] | $ 7,968.00 |
| 13% annual income tax thereon | $ 1,036.00 |
| Monthly requirement | $ 86.00 |
| $86 divided by two because of depleting nature of the principal of the fund | $ 43.00 |

25 yr. factor [30 (Ans. 2) minus 5 years gone by] at 4%
[Ans. 11] is 190.87 –

| | |
|---|---|
| TOTAL ITEM V – 190.87 x $43.00 | $ 8,207.00 |
| SUB-TOTAL OF ITEMS I, II, III, IV | $199,213.00 |
| TOTAL MATLOCK AWARD | $207,420.00 |

The motion of plaintiffs to submit additional interrogatories to the Jury is denied.

The motion for new trial is also denied.

The motion of defendant United Air Lines to strike the affidavit of Chapin is granted.

Counsel for plaintiffs will prepare and submit a judgment under the Rules, in favor of plaintiffs Matlock and against the defendant United Air Lines for the above sum of $207,420.

## THEOBALD

The Interrogatories and Verdict in the Theobald case are as follows:
"We, the Jury in the above-entitled case, unanimously find as follows:

"QUESTIONS | ANSWERS

1. Which one of the following named persons, viz: Frank A. Theobald, 36 years of age on April 21, 1958; Myrtle C. Theobald, 36 years of age on April 21, 1958, his widow; Carol Ann Theobald, daughter, 4 years of age on April 21, 1958; Theresa Kay Theobald, daughter, 2 years of age on April 21, 1958, had the shortest life expectancy?

Frank A. Theobald
(Name)

2. How many years was that life expectancy on April 21, 1958?

27 yrs.
(Number of years)

3. How many years was decedent's work and earning expectancy from and after April 21, 1958?

27 yrs.

| "QUESTIONS | ANSWERS |
|---|---|
| 4-a. Would decedent have remained employed by the United States during the remainder of his work expectancy? | Yes |
| If your answer to Question 4-a is "No," you need not answer Questions 4-b and 4-c. | |
| 4-b. If your answer to Question 4-a is "Yes," state whether, and if so, when, he would have been promoted to a higher grade. | GS-13 on 1/1/63 |
| 4-c. If your answer to Question 4-a is "Yes," what allowances, if any should be made for wage increases or decreases by Acts of Congress other than those in existing law which I have stated to you in the Instructions? | 1% per yr. |
| 4-d. From and after April 21, 1958 what total sum of money do you find decedent would have earned by January 1, 1963, had he lived? | $ 42,598 |
| 4-e. What total sum of money do you find decedent would have earned from and after January 1, 1963, to the end of his earning expectancy stated in your answer to No. 3 above? | $363,201 |
| 5. From and after the end of his work and earning expectancy, and during the remainder of his life, if any such remained, what total sum of money do you find decedent would have received as a pension paid as a result of his government employment? | None |
| 6. What is the total reasonable value of services susceptible of being furnished by others which you find it was reasonably probable that decedent would have provided under my Instructions to you to the plaintiffs during his lifetime? | 43,800 (Total value) |
| 7. What percentage of his annual income, had he lived, from and after April 21, 1958, would have been used by decedent for his own personal expenses which were eliminated by his death? | 25% |
| 8. What percentage of his income would be paid as annual income tax had he lived after April 21, 1958? | 15% |

| "QUESTIONS | ANSWERS |
|---|---|
| 9. What percentage of the income from the award will be paid by plaintiffs as income tax? | 11% |
| 10. In determining the present reasonable value of services as defined in No. 6 above, what annual rate of inflation, if any, do you find should be allowed? | 1% |
| 11. What discount rate should be applied in arriving at the total sum of general damages? | 4% |
| 12. What sum of money do you find plaintiffs' general damages to be which you assess against Deft United Air Lines? | $162,412 |

DATED: At Los Angeles, California, February 14, 1963.

Burford A. Reynolds
Foreman"

Applying the same principle and·methods of calculation to the Theobald case as were applied in the Nollenberger and Matlock cases, the Court arrives at substantially the same figure as the total sum in damages found by the Jury in the Theobald case.

For that reason, the motions of the plaintiffs Theobald to re-submit the case to the Jury or for the Court to arrive at a different sum in total damages based upon the answers to the interrogatories or for a new trial are each denied.

The motion of defendant United Air Lines to strike the affidavit of Chapin is granted.

Plaintiffs' counsel will prepare and submit a judgment under the Rules, in favor of plaintiffs Theobald and against defendant United Air Lines for the above sum of $162,412.00.

## THOMPSON

The Interrogatories and Verdict in the Thompson case are as follows:

"We, the Jury in the above-entitled case, unanimously find as follows:

| "QUESTIONS | ANSWERS |
|---|---|
| 1. Which one of the following named persons, viz: Harold E. Thompson, born July 7, 1913; Pernita C. Thompson, his widow, born May 23, 1915; Milton LeRoy Thompson, son, born September 13, 1939; and Phillip Edward Thompson, son, born March 28, 1944, had the shortest life expectancy? | Harold E. Thompson (Name) |
| 2. How many years was that life expectancy on April 21, 1958? | 25 (Number of years) |

| "QUESTIONS | ANSWERS |
|---|---|
| 3. How many years was decedent's work and earning expectancy from and after April 21, 1958? | 15<br>(Number of years) |
| 4–a. Would decedent have remained employed by the United States during the remainder of his work expectancy? | Yes<br>(Yes or No) |
| If your answer to Question 4–a is "No," you need not answer Questions 4–b and 4–c. | |
| 4–b. If your answer to Question 4–a is "Yes," state whether, and if so, when, he would have been promoted to a higher grade. | GS-13-Step 1-Jan. 1, 1965 |
| 4–c. If your answer to Question 4–a is "Yes," what allowances, if any should be made for wage increases or decreases by Acts of Congress other than those in existing law which I have stated to you in the Instructions? | 1% |
| 4–d. From and after April 21, 1958, what total sum of money do you find decedent would have earned by January 1, 1963, had he lived? | $43,136.00 |
| 4–e. What total sum of money do you find decedent would have earned from and after January 1, 1963, to the end of his earning expectancy stated in your answer to No. 3 above? | $129,345.00 |
| 5. From and after the end of his work and earning expectancy, and during the remainder of his life, if any such remained, what total sum of money do you find decedent would have received as a pension paid as a result of his government employment? | $77,160.00 |
| 6. What is the total reasonable value of services susceptible of being furnished by others which you find it was reasonably probable that decedent would have provided under my Instructions to you to the plaintiffs during his lifetime? | $32,700.00 |
| 7. What percentage of his annual income, had he lived, from and after April 21, 1958, would have been used by decedent for his own personal expenses which were eliminated by his death? | 25%–does not include ½ deduction for retirement |
| 8. What percentage of his income would be paid as annual income tax had he lived after April 21, 1958? | 13.3 |
| 9. What percentage of the income from the award will be paid by plaintiffs as income tax? | 9% |

| "QUESTIONS | ANSWERS |
|---|---|
| 10. In determining the present reasonable value of services as defined in No. 6 above, what annual rate of inflation, if any, do you find should be allowed? | 1% |
| 11. What discount rate should be applied in arriving at the total sum of general damages? | 4% |
| 12. What sum of money do you find plaintiffs' *general damages* to be which you assess against Deft United Air Lines? | $137,623 |
| Special damages (stipulated) | 1,055.40 |
| TOTAL DAMAGES | $138,678.40 |

DATED: At Los Angeles, California, February 21, 1963.

Burford A. Reynolds
Foreman"

———◆———

Applying the same principle and methods of calculation to the Thompson case as were applied in the Nollenberger and Matlock cases, the Court arrives at substantially the same figure as the total sum in damages found by the Jury in the Thompson case.

For that reason, the motions of the plaintiffs Thompson to re-submit the case to the Jury or for the Court to arrive at a different sum in total damages based upon the answers to the interrogatories or for a new trial are each denied.

The motion of defendant United Air Lines to strike the affidavit of Chapin is granted.

Plaintiffs' counsel will prepare and submit a judgment under the Rules, in favor of plaintiffs Thompson and against defendant United Air Lines for the above sum of $138,678.40.

In each of the cases a stipulation was made between counsel that an additur be made to the general verdict for the amount of special damages for funeral expenses, loss of personal property and the like, so in preparing the judgments counsel will add the amounts so stipulated.

APPENDIX I

INSTRUCTION NO. "R-2".

You have heretofore been instructed that in addition to the evidence in the case, you may take judicial notice of certain things. One of the things of which you may take judicial notice is the official publications of the Government.

In connection with statistics on Income Tax Returns, the latest available statistical data published by the Internal Revenue Service of the United States Treasury Department is Publication No. 79 covering statistical data for Income Tax Returns for the year 1959.

In considering the probable income tax which decedent would have had to pay had he lived and filed a joint return with his wife, you are instructed that the above-mentioned Government Publication shows that on the joint returns of husband and wife, the tax paid on the adjusted gross income by all of the taxpayers in the United States filing joint returns in 1959 was as follows:

Where adjusted gross income was $9,000 but under $10,000, the percentage of tax was approximately 11.8 per cent;

Where adjusted gross income was $10,000 but under $15,000, the percentage of tax was approximately 13.3 per cent;

Where adjusted gross income was $15,000 but under $20,000, the percentage of tax was approximately 16.6 per cent;

Where adjusted gross income was between $20,000 and $25,000, the percentage of tax was approximately 18.8 per cent;

On incomes between $25,000 and $50,000, the tax was approximately 23.9 per cent.

In connection with the taxes to be paid on the money derived by the plaintiffs from any award that you may make, you will keep in mind that the Court will be concerned with a division of the award between the plaintiff widow and the _____ children as might be required by law, and that each would be required to pay income tax on the income from the award, but not on the award itself.

If, for instance, you should arrive at a total sum of damages in the amount of $300,000, and that three per cent would be a reasonably expected return on that sum, that would mean $9,000 a year total income which, in turn, would be divided between the plaintiff widow and each of the children as the Court may determine that the law requires.

The same Government Publication shows that in all of the Returns for the year 1959 where the adjusted gross income was under $5,000, the tax was approximately nine per cent on the Returns of single persons not the heads of households, and on the adjusted gross incomes between $5,000 and $10,000, the tax collected was approximately 13 per cent of such adjusted gross income.

In using the figure of $300,000, the Court is not suggesting or intimating that your verdict should be in that sum or that you are limited in any way, either more or less than that figure. The same is true as to the three per cent return thereon. These figures are used by the Court only as illustrations to aid you in consideration of the income tax problems which you may find to be concerned in your verdict.

APPENDIX II

Present Value of $1.00 per Month, Payable for *n* Years, if
Money is Worth *i* per Annum, Compounded Annually.

| n | i = 3% | i = 3½% | i = 4% |
|---|---|---|---|
| 1 | $ 11.8098 | $ 11.7790 | $ 11.7485 |
| 2 | 23.2757 | 23.1597 | 23.0451 |
| 3 | 34.4075 | 34.1556 | 33.9073 |
| 4 | 45.2152 | 44.7796 | 44.3517 |
| 5 | 55.7081 | 55.0443 | 54.3943 |
| 6 | 65.8953 | 64.9620 | 64.0508 |
| 7 | 75.7859 | 74.5442 | 73.3357 |
| 8 | 85.3883 | 83.8025 | 82.2636 |
| 9 | 94.7112 | 92.7477 | 90.8481 |
| 10 | 103.7624 | 101.3903 | 99.1026 |
| 11 | 112.5500 | 109.7406 | 107.0394 |
| 12 | 121.0816 | 117.8086 | 114.6709 |
| 13 | 129.3649 | 125.6038 | 122.0091 |
| 14 | 137.4067 | 133.1354 | 129.0649 |
| 15 | 145.2145 | 140.4122 | 135.8494 |
| 16 | 152.7947 | 147.4431 | 142.3730 |
| 17 | 160.1543 | 154.2361 | 148.6455 |
| 18 | 167.2993 | 160.7994 | 154.6769 |
| 19 | 174.2364 | 167.1408 | 160.4763 |
| 20 | 180.9713 | 173.2677 | 166.0527 |

| n | i = 3% | i = 3½% | i = 4% |
|---|--------|---------|--------|
| 21 | 187.5101 | 179.1874 | 171.4145 |
| 22 | 193.8586 | 184.9070 | 176.5702 |
| 23 | 200.0220 | 190.4332 | 181.5274 |
| 24 | 206.0059 | 195.7725 | 186.2941 |
| 25 | 211.8156 | 200.9311 | 190.8775 |
| 26 | 217.4560 | 205.9154 | 195.2845 |
| 27 | 222.9322 | 210.7311 | 199.5221 |
| 28 | 228.2489 | 215.3840 | 203.5966 |
| 29 | 233.4106 | 219.8796 | 207.5145 |
| 30 | 238.4221 | 224.2231 | 211.2817 |
| 31 | 243.2876 | 228.4197 | 214.9039 |
| 32 | 248.0114 | 232.4744 | 218.3869 |
| 33 | 252.5975 | 236.3919 | 221.7360 |
| 34 | 257.0502 | 240.1770 | 224.9562 |
| 35 | 261.3731 | 243.8341 | 228.0525 |
| 36 | 265.5701 | 247.3675 | 231.0297 |
| 37 | 269.6449 | 250.7816 | 233.8925 |
| 38 | 273.6010 | 254.0801 | 236.6451 |
| 39 | 277.4419 | 257.2670 | 239.2918 |
| 40 | 281.1708 | 260.3462 | 241.8368 |
| 41 | 284.7912 | 263.3212 | 244.2839 |
| 42 | 288.3062 | 266.1957 | 246.6369 |
| 43 | 291.7187 | 268.9730 | 248.8993 |
| 44 | 295.0318 | 271.6563 | 251.0748 |
| 45 | 298.2485 | 274.2489 | 253.1661 |