[No. 120-41281-2.     Division Two.     August 3, 1970.]

PAUL K. PANCRATZ, as *Executor, Appellant,* v. JOHN TURON *et al., Respondents.*

*Rutherford, Kargianis & Austin, Russell A. Austin, Jr.* and *Samuel C. Rutherford,* for appellant.

*R. DeWitt Jones,* for respondents.

PETRIE, J.—A tragic motor vehicle accident in the vicinity of Vancouver, Washington on June 2, 1965, took the lives of two sisters: Mrs. Pearl B. Fulkerson, driver of one of the vehicles; and Mrs. Mabel B. Pancratz, passenger in the Fulkerson vehicle. The executor of Mrs. Pancratz' estate, Paul K. Pancratz, filed this action against the estate of Mrs. Fulkerson and also against John and Marion Turon,[1] husband and wife. Mrs. Turon was the operator of the other vehicle involved in the accident.

Plaintiff's primary basis for claimed actionable damages is contained in the following paragraph in his complaint:

> That the plaintiff's decedent was the sole and only support of her incompetent daughter, Sara Lee Pancratz, who, as a result of the foregoing negligence of the defendant, has been deprived of her mother's affection, care and support, and who as a result of said accident has been necessarily institutionalized at great and continuing expense to the estate of the decedent.

The record reveals that Sara Lee Pancratz, 25 years of age at the time of her mother's death, mentally incompetent since birth and categorized as a Mongoloid, had lived at home with her mother, Mabel Pancratz, until Mrs. Pancratz' untimely death, and is permanently unable to adequately take care of herself except under rather closely supervised situations. After her mother's death, Sara Lee lived briefly in the family household of her older brother, Paul Pancratz, who has now been appointed her guardian. Since February 25, 1966 she has been a patient at Grafton State School, a state institution at Grafton, North Dakota. At the time of her death, Mrs. Pancratz was 64 years of age and had a life expectancy of 13.51 years.

---

[1] The jury found no liability against defendants Turon and they are not parties to this appeal.

After trial on the merits, a jury returned a verdict for plaintiff and against the Fulkerson estate only, in the amount of $14,791.61. Plaintiff's appeal is from the judgment entered on the *amount* of the jury's verdict and seeks a new trial against the defendant, estate of Fulkerson, only, limited to the single issue of damages.

Plaintiff's appeal raises two interrelated issues: (1) Whether or not the jury should have been advised of the fact and the amount of Social Security Administration and Veterans Administration benefits now being paid to the guardian of Sara Lee Pancratz and which benefits are now partially providing the cost of her care at Grafton State School; and (2) whether or not the jury should have been specifically instructed that the reasonable cost of her present custodial care may be considered by them as a guide toward establishing the value of her mother's contribution to Sara Lee during the mother's lifetime.

■ ■ Plaintiff's right of action is granted by statute.[2] The persons for whose benefit the action may be brought and the general standard for damages recoverable are also controlled by statute.[3] Under these statutes, the adult child need not prove dependency upon his or her parent; a showing of a "pecuniary loss" is sufficient. *Jensen v. Culbert,* 134 Wash. 599, 236 P. 101 (1925). Despite the statutory language granting the jury broad authority to assess the amount of damages, certain inherent restrictions upon that authority do exist.

---

[2]RCW 4.20.010 provides: "When the death of a person is caused by the wrongful act, neglect or default of another his personal representative may maintain an action for damages against the person causing the death; and although the death shall have been caused under such circumstances as amount, in law, to a felony."

[3]RCW 4.20.020 provides: "Every such action shall be for the benefit of the wife, husband, child or children of the person whose death shall have been so caused. If there be no wife or husband or child or children, such action may be maintained for the benefit of the parents, sisters or minor brothers, who may be dependent upon the deceased person for support, and who are resident within the United States at the time of his death.

"In every such action the jury may give such damages as, under all circumstances of the case, may to them seem just."

It is necessarily within the judgment of the jury to assess damages as "to them seem just," under the evidence and "circumstances of the case"; subject, of course, to certain judicial control.

*Kramer v. Portland-Seattle Auto Freight, Inc.,* 43 Wn.2d 386, 392, 261 P.2d 692 (1953). *See also Shead v. Riser,* 136 Wash. 270, 239 P. 562 (1925).

Well within the ambit of "judicial control" are the two issues presented by this appeal: Materiality and relevancy of evidence bearing on damages; and propriety of instructions to the jury. *Fleming v. Seattle,* 45 Wn.2d 477, 275 P.2d 904. (1954).

In anticipation of the evidentiary problem relating to the first issue, plaintiff filed a pretrial motion in liminae[4] seeking to preclude any question being propounded to witnesses designed to elicit the source of payment for Sara Lee's care at Grafton. The trial court, in effect, denied the motion, indicating instead that the matter should be raised at an appropriate time during trial. Subsequently, over plaintiff's vigorous protest, the defense was permitted to elicit from Sara Lee's guardian, Paul Pancratz, that he is now receiving benefits for his ward from the Social Security Administration in the amount of $69 per month and from the Veterans Administration in the amount of $40 per month.

Defendant estate acknowledges that this state has sanctioned the "collateral source rule" specifically applied to social security and veterans' benefits, *Stone v. Seattle,* 64 Wn.2d 166, 391 P.2d 179 (1964); but contends that such a rule should be applied so as to preclude mitigation of a

---

[4]The motion read: "Comes Now the plaintiff, by and through counsel, and requests the court to rule prior to impaneling the jury or in any event prior to the examination of any witnesses, that no questions will be allowed of any witness as to the specific source of payment for the care of Sara Lee Pancratz at the Grafton State School in Grafton, North Dakota.

"The reason for this request is to avoid any possibility of reversible error, since the only purpose of such a question could be to confuse the jury and to prejudice plaintiff's case. The answer to any such line of inquiry would be immaterial under the collateral source. doctrine as set out in plaintiff's Trial. Brief."

plaintiff's losses only where the benefits spring into existence *because* of the death caused by the tort-feasor. In the instant case, the defendant estate contends, the jury is entitled to know that these benefit sources had been payable to the mother during life for the benefit of Sara Lee—and that after the mother's death they continued to be paid to the new guardian but still for Sara Lee's benefit. They should, the argument continues, be available to demonstrate a limitation on the amount of Sara Lee's "pecuniary loss."

In order to better understand the positions of the contending parties, a few more facts are necessary. Sara Lee's father had been a disabled veteran of World War I. He died in 1940, several months after Sara Lee was born. From the date of his death, his widow, Mabel Pancratz, received a benefit from the Veterans Administration. Effective October 1, 1954, and continuing to the date of Mrs. Pancratz' death, the amount of that benefit, based in part upon the fact that Sara Lee was permanently incapable of self-support, was $63 per month. The record does not indicate any segregation as between the widow's portion of the benefit and the dependent child's portion of the benefit. Subsequent to Mrs. Pancratz' death, Sara Lee's guardian received, and continues to receive a Veterans Administration benefit in the amount of $40 per month.

Mrs. Pancratz became 62 years of age on July 5, 1962. At that time she became eligible for, received and continued to receive until her death, a social security benefit in the amount of $60.80 per month as old age assistance plus an additional amount of $38 per month for her dependent daughter. After Mrs. Pancratz' death, Sara Lee's guardian received a benefit from the Social Security Administration in the amount of $61.10 per month, which was subsequently increased to $69 per month.

Both benefits, during Mabel Pancratz' lifetime, were used to bear a substantial portion of the cost of maintaining the home which mother and daughter shared together. The only other income into the home was the mother's irregular earnings of approximately $1,000 per year. Plaintiff's coun-

sel, in his direct examination of Paul Pancratz, did not attempt to demonstrate Sara Lee's financial dependence upon her mother—did not, presumably, intend to rely upon the direct financial support which the mother provided to her adult daughter.

Obviously, the decedent mother's income—more particularly, the extent of the use of such income as support for the adult child is a material fact bearing on *an* element of the child's loss. In the instant case, the adult child had two resources, the total effect of which was merely to negate the plaintiff's pleading that the mother was the child's "sole and only support." To the extent that the amount of the daughter's benefits—although payable to the mother during the mother's lifetime—tended to deny the plaintiff's pleading of sole source of support, they were material facts. We note, particularly, that plaintiff made no serious objection to the admissibility of such matters.

■ We fail to see, however, how the extent of the daughter's resources after her mother's death can in any sense even partially be used as a measure of the extent of the child's loss caused by her mother's death. The increase, if any, in the amount of the social security or the veteran's benefit now payable to her present guardian *because* of her mother's death is immaterial because of the "collateral source rule." The tort-feasor who caused the loss does not reap the benefit occasioned through another's assumption of a committed obligation. The amount of the benefit (assuming no change in amount) simply transferred to a new guardian for Sara Lee's continued support does not measure her loss caused by the death of her mother.

> In this connection, it is difficult to see how one wrongfully causing the death of another can be called upon to pay under a rule in any way fixed by the financial or pecuniary ability, or the earning capacity, or lack of it, of the beneficiary, in no way traceable to the person required to pay.

*Clason v. Velguth,* 168 Wash. 242, 246, 11 P.2d 249 (1932).

Permitting the jury the opportunity to offset the plaintiff's loss by the amount of social security and veteran's

benefits now being received by Sara Lee's guardian on her behalf—an opportunity which the jury appears to have exercised in this instance—constituted prejudicial error requiring a new trial as to the measure of damages.

We pass now to the other issue presented by this appeal. Plaintiff contends that the trial court erred in not presenting the following proposed instruction to the jury as to how damages should be measured:

In determining "pecuniary loss" you should consider what benefits of pecuniary value, including money, goods and services the decedent would have contributed to her dependent daughter had she lived. You should consider:

1. What the decedent plaintiff could reasonably have been expected to contribute to her child in the way of support, love, care, guidance, training, instruction and protection. *Where any of these items are now being provided to her child by another for compensation, you may consider the reasonable costs thereof as a guide to the value of the decedent's contribution.*

2. What the dependent daughter of the decedent plaintiff suffered in the loss of companionship of her mother.

3. What the immediate loss was for the funeral and burial of the decedent and the normal charges incident to her death.

In determining "pecuniary loss" you should not consider the grief or sorrow of the survivors.

(Italics ours.)

The instructions actually given[5] to the jury included the

[5]Instruction 21 and 21A provided: "In determining 'pecuniary loss' you should consider what benefits of pecuniary value, including money, goods and services, the decedent would have contributed to the dependent child had the decedent lived. You should consider the evidence in the light of the following matters:

"What the decedent, Mabel B. Pancratz could reasonably have been expected to contribute to her daughter in the way of support, love, care, guidance, training, instruction, and protection. In this connection you should consider the age of Mabel B. Pancratz, her health, life expectancy, occupation, habits of industry, sobriety and thrift. You should also consider her earning capacity and in this connection you should consider what she actually earned prior to her death and what she might reasonably have been expected to earn in the future, together with the amount which you find she customarily contributed to

elements contained in the proposed instruction, but omitted the specificity contained in the italicized matter. On the other hand, the instructions given (an appropriate adaptation of Washington Pattern Jury Instructions, 6 Wash. Prac., 31.02 at 169 and 31.03 at 171 (1967)) contained the specificity of the "earning capacity" and "customarily contributed" guides as set forth in Washington Pattern Jury Instructions 31.02.

Plaintiff's theory of the proper measure of recoverable damages for loss of the mother's contribution of services *and* monetary support is the reasonable replacement cost thereof (currently $5.71 per day at Grafton School); whereas, defendant's theory of the proper guide of recoverable damages for monetary support is the amount of the monetary contribution which "might reasonably have been expected to be contributed in the future," measured by the mother's prior "earning capacity" and what she "customarily contributed" to the child in the past.

Each theory is a proper guide for the specific purpose for which it has been designed. Each has its limitations. Neither is complete in itself as embracing all the elements of recoverable damages. Indeed, no formula or guide can be expected to measure the pecuniary loss with mathematical precision, neither overstating nor underevaluating the actual loss. Particularly elusive is the judicious, dispassionate, and unbiased guide when, as here, "death deprives a beneficiary of intangibles difficult of translation into terms of money." *Kramer v. Portland-Seattle Auto Freight, Inc.*, 43 Wn.2d 386, 391, 261 P.2d 692 (1953).

■ Each party is entitled, when the evidence warrants it, to have his case properly presented to the trier of the

---

her dependent child and which the evidence establishes might reasonably have been expected to be contributed in the future.

"In determining 'pecuniary loss' you are not to consider grief or sorrow of the survivors."

"In the event you find for the plaintiff against the defendants, or either of them, then you will also award such sums as you find from the evidence were reasonable and necessary for funeral and burial of decedent and normal expenses incident to her death."

facts. *Elmer v. Vanderford,* 74 Wn.2d 546, 445 P.2d 612 (1968). In the instant case, the form of the proposed instruction is faulty because it embraced only one theory. The trial court properly refused to submit it to the jury. In any subsequent retrial of this matter, because of the somewhat unique factual pattern, both theories should be incorporated within one instruction—not as supplementary to one another, but rather in recognition of the purpose for which each is intended.

Those portions of the judgment entered, which denied plaintiff's motion for new trial limited to the issue of damages against the estate of Pearl B. Fulkerson, and which accepted the verdict of the jury as the court's measure of plaintiff's damages against the estate of Pearl B. Fulkerson, are reversed; and this cause remanded for retrial limited solely to the issue of plaintiff's damages against the estate of Pearl B. Fulkerson, deceased.

ARMSTRONG, C. J., and PEARSON, J., concur.

Petition for rehearing denied September 21, 1970.

Review denied by Supreme Court October 22, 1970.