[No. 274-2.    Division Two.    June 3, 1971.]

WILFRED SADLER, *Respondent*, v. OPAL E. WAGNER, *as Administratrix, Appellant.*

*Judson T. Klingberg* (of *Klingberg, Houston, Reitsch, Cross & Frey*), for appellant.

*Wayne D. Purcell* (of *Studley, Purcell & Spencer*), for respondent.

ARMSTRONG, J.—The defendant-appellant is the personal representative of Howard E. Pittenger and Onis Vera Pittenger, who were both killed in a violent daylight collision on Interstate Highway 5 at the Carrolls Avenue intersection near Kelso, Washington. Defendant appeals from a judgment entered upon a jury verdict award of $75,000 for personal injuries and automobile damage sustained by the plaintiff in the collision.

Plaintiff was driving north on Interstate Highway 5 at a speed of approximately 65 miles per hour, in the left lane of the 4-lane highway, which had two northbound and two southbound lanes. He had passed the automobile of the witness Hagen and was driving a few hundred feet ahead of the Hagen vehicle, which was in the right northbound lane of traffic. As the plaintiff's automobile approached the Carrolls Avenue intersection he observed an oncoming southbound automobile, driven by the witness Mullensky, which was preparing to make a left-hand turn across the northbound lanes and into Carrolls Avenue. The Pittenger automobile was driving on Carrolls Avenue toward Interstate Highway 5 in a westerly direction.

Plaintiff did not see the Pittenger automobile as it stopped at the stop sign before attempting to make a left-hand turn across the limited access highway. The plaintiff stated, "All I know is that immediately upon my right was this car coming right across in front of me, and I just hit the brakes and turned the car. It just seemed to zoom in front of me, immediately in front." Plaintiff's vehicle struck the Pittenger vehicle broadside at a point in the left edge of the northbound passing lane. Plaintiff's vehicle left 49 feet of skidmarks before the impact.

Plaintiff's description of the collision was corroborated by the witness Mullensky, who was watching both vehicles so that he could make a left turn across the northbound lanes of traffic and into Carrolls Avenue. In describing the actions of the Pittenger automobile Mullensky said, "All he was doing was rolling forward, and suddenly accelerated across the highway; . . .". Mullensky stated that plaintiff was about a hundred feet south of the approximate point of impact when the Pittenger vehicle pulled out on the highway in front of him.

The Hagen vehicle was variously described as 200 feet and 200 yards behind the plaintiff's vehicle, which had shortly before passed the Hagen vehicle. Hagen had avoided the collision by slowing down and pulling off the freeway onto the shoulder of the road. Hagen said he was driving 65 miles an hour when the plaintiff slowly passed by him. The speed limit at that section of the highway was 70 miles per hour. There was no testimony that plaintiff changed his speed prior to the time that the Pittenger vehicle entered the limited access highway or that plaintiff had exceeded the speed limit at any time.

Defendant first contends that the trial court erred in withdrawing the issue of contributory negligence of the favored driver from the jury and directing a verdict in favor of the plaintiff. Defendant concedes that the decedent, Howard E. Pittenger, was the disfavored driver and was guilty of negligence as a matter of law in failing to yield the statutory right-of-way to plaintiff. Defendant argues, however, that reasonable minds could differ on the issue of plaintiff's contributory negligence. After considering the evidence and all inferences from the evidence in the light most favorable to the nonmoving party,[1] we find that reasonable minds could not differ on the issue of contributory negligence and the trial court was justified in

[1]For the purpose of considering the evidence in the light most favorable to the defendant-appellant we are disregarding some testimony admitted by the trial court over defendant's objection, the admission of which is assigned as error on appeal.

withdrawing that issue from the jury and directing a verdict in favor of plaintiff.

Defendant argues that rights-of-way at intersections are relative and the jury should have determined whether plaintiff had a duty to see the Pittenger automobile stop at the freeway entrance and proceed across the highway in a manner that would place the vehicle in the path of plaintiff's automobile. It is contended that plaintiff was charged with seeing what was there to be seen and his failure to keep a lookout and observe the Pittenger vehicle would constitute contributory negligence.

█ In considering this contention, it must be remembered that shortly before the accident plaintiff had passed the Hagen vehicle and plaintiff was driving in the left-hand northbound lane at a speed of at least 65 miles an hour, but under the 70 miles per hour speed limit. He was watching the road ahead, the oncoming Mullensky automobile which was obviously preparing to make a left turn across the lane of travel plaintiff was occupying, and other traffic on the highway. Plaintiff did not see the Pittenger vehicle until he did not have sufficient reaction time to avoid a collision. The contention that the plaintiff had a duty to keep a lookout for the Pittenger automobile was answered in *Petersavage v. Bock*, 72 Wn.2d 1, 5, 431 P.2d 603 (1967):

> Defendants argue that, even if the evidence does not provide substantial evidence of Mr. Petersavage's excess speed, it does supply substantial evidence that he failed to maintain a proper lookout, but we cannot accept this reasoning. One driving upon an arterial highway has a right to assume that cars entering upon it will yield the right of way, and he is not obliged to anticipate that vehicles standing or approaching to enter will fail to yield the right of way. Only when it becomes apparent to the favored driver that the disfavored driver will not yield, is he required to react concerning this possible danger.
>
> When, in the exercise of reasonable care, it becomes apparent to the favored driver that the disfavored driver will not yield the right of way, the favored driver is, nevertheless, still entitled to a reasonable reaction time

before he can be charged with contributory negligence. [Citations omitted.] To rule differently, would, we fear, make shambles of the right-of-way rule. Everyone driving upon an arterial highway observing vehicles at the intersections, approaching or waiting to enter, would be obliged to slow his vehicle to a near halt until he could ascertain with reasonable certainty whether the approaching vehicles intended to allow a fair margin of safety before entering upon the arterial. This, of course, defeats the very idea of arterial highways and the right of way at uncontrolled intersections, both of which are designed to allow a continuous flow of traffic at safe speeds. [2]

In *Zahn v. Arbelo*, 72 Wn.2d 636, 637, 434 P.2d 570 (1967), the court stated, "The favored driver on an arterial protected by a stop sign has one of the strongest rights of way which the law allows." Both *Zahn* and *Petersavage* involved an arterial, but the arterial was not a limited access highway such as we are considering in this case. The policy giving the favored driver on an arterial this strong right-of-way is even more compelling when the arterial is a high speed limited access highway.

Defendant further contends that when a vehicle is being driven on a multiple lane highway it should be driven in the right-hand lane if it is proceeding slower than the maximum speed, except when it is overtaking or passing another vehicle. She argues that since plaintiff was possibly 200 yards ahead of the vehicle he had passed he should have moved back into the right-hand lane of traffic. In support of this contention defendant cites RCW 46 .61.100(2):

Upon all roadways any vehicle proceeding slower than

---

[2] The statutory duties of the disfavored driver at an intersection protected by a stop sign were changed in 1965. This collision occurred after that date. The collisions described in *Petersavage v. Bock,* 72 Wn.2d 1 and *Zahn v. Arbelo,* 72 Wn.2d 636 occurred prior to that date. Although the statutory duties were changed in RCW 46.61.190, the quotations we rely upon from those cases continue to be the law of this state. *See Poston v. Mathers,* 77 Wn.2d 329, 462 P.2d 222 (1969). For a concise statement of the rights and duties of both drivers *see* WPI 70.02.02, 6 Wash. Prac. 248.

the legal maximum speed or at a speed slower than necessary for safe operation at the time and place and under the conditions then existing, shall be driven in the right-hand lane then available for traffic, or as close as practicable to the right-hand curb or edge of the roadway, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection, exit, or into a private road or driveway when such left turn is legally permitted.

Even if we were to assume that plaintiff should have moved back into the right-hand lane of traffic, and we could not find that he had such a duty under the circumstances of this case, there is a more compelling reason why he would not be negligent as a matter of law by his failure to change lanes. Although there are no cases defining the purpose of the statute, it is obvious that it seeks to eliminate the hazard of slower moving vehicles driving in the left-hand lane and thereby impeding safe and expeditious passing by vehicles driving at the maximum rate of speed. It was not designed to regulate the rights of vehicles at intersections. The rule is well settled that violation of a statute is not negligence per se except as to persons within the class intended to be protected by the statute. *Clevenger v. Fonseca*, 55 Wn.2d 25, 345 P.2d 1098 (1959). Defendant was not within that class of persons.

Furthermore, there was no inference from the evidence which would establish that the lane of traffic occupied by plaintiff would be a proximate cause of the collision. In order to predicate liability upon the violation of a statute it must be established that the violation was the proximate cause of the injury. *Currie v. Union Oil Co.*, 49 Wn.2d 898, 307 P.2d 1056 (1957); *Nance v. Metropolitan Transit Corp.*, 79 Wn.2d 274, 484 P.2d 904 (1971).

After considering the evidence and the inferences from the evidence in the light most favorable to the defendant we must conclude that reasonable minds could not differ on the issue of contributory negligence. The uncontroverted facts established that plaintiff was not accorded a reasonable reaction time after he knew, or should have known,

that the Pittenger vehicle was not going to yield him the right-of-way. There is no inference from the evidence which would justify the trial court in finding that defendant did not act as a reasonably prudent man under the circumstances then existing—therefore, he could not have been guilty of contributory negligence. The trial court would have erred had it not directed a verdict on the issue of liability.

Defendant next contends that the court erred in permitting a lay witness to express an opinion and in admitting in evidence a sketch prepared by a state patrolman. If we were to assume that the court was in error in each instance, and we do not so find, we could disregard both items of evidence and we would still be compelled to hold that reasonable minds could not differ on the issue of the lack of any substantial evidence of contributory negligence. Neither the opinion evidence of the lay witness nor the accident sketch was inflammatory in nature and we cannot speculate that either might have had an effect upon the size of the verdict.

Defendant's last contention is that the trial court erred in refusing to admit in evidence a mathematical table designated "Present Value of $1" for due dates ranging from 1 to 50 years at anticipated percentage earnings ranging from 4 per cent to 8 per cent. Defendant maintains that the court could have either admitted the tables in evidence or judicially noticed them. This contention is based upon the Washington rule that future medical expenses and future loss of earnings must be reduced to present worth. *Kellerher v. Porter*, 29 Wn.2d 650, 189 P.2d 223 (1948); *Wentz v. T. E. Connolly, Inc.*, 45 Wn.2d 127, 273 P.2d 485 (1954). In recognition of this rule the court gave an instruction based upon WPI 34.02, 6 Wash. Prac. 182.[3] De-

[3] " 'Present cash value' as used in these instructions means the sum of money needed now, which, when added to what that sum may reasonably be expected to earn in the future, will equal the amount of the loss at the time in the future when the benefits would have been received.

"The rate of interest to be applied by you in making this determi-

84

fendant argues, however, that by failing to admit present worth tables or to judicially notice the tables, the jury was left without any tools to carry out the instruction.

The court was not advised of the identity, validity or use of the mathematical formula other than the statement of defendant's counsel that "These tables can be found in any standard text book, to be used by lawyers or anyone." Plaintiff contends that the proper way to present this is by the testimony of experts who can explain the use of the mathematical computations and be subject to cross-examination.

In analyzing the Washington Pattern Instruction given by the court we agree that most jurors probably would not be able to fully utilize the instruction without an appropriate mathematical formula. We agree with the trial court that there should be some foundation laid for the tables even though they represent mathematical computations. We also share the trial court's concern that the jurors may not be able to understand how to convert a monetary award to the present value of money by utilizing the mathematical computation offered in this case.

We therefore hold that the trial court is authorized to exercise its discretion in determining whether the present worth of money tables will be clearly intelligible to the average juror without further explanation by an expert witness. In exercising its discretion the court should consider, (1) the identity and validity of the mathematical computation, (2) the specific and appropriate use of it and (3) the method by which the jury could actually use it to reduce to present worth the amount allowed for future medical expenses and future loss of earnings. After considering these factors the trial court should determine whether the present worth tables should be admitted into evidence or judicially noticed.

nation should be that rate which in your judgment is reasonable under all the circumstances taking into consideration the prevailing rates of interest in the area which can reasonably be expected from safe investments which a person of ordinary prudence, but without particular financial experience or skill, can make in this locality."

There is, however, a corollary principle to reducing an award to the present value of money by proving what a given sum of money will produce by investing it at current interest rates. The jury is also entitled to know that this may be offset by a change in the purchasing power of money if the plaintiff produces evidence of the probable reduced value of money at given periods of time in the future. This points up the desirability of the court requiring expert testimony to prove the present worth of money invested at interest. The plaintiff could cross-examine the expert on the probable reduced value of the dollar during the same given periods in the future, or he could produce his own expert to determine the probable inflationary trend. In the current economy we would anticipate that one might offset the other.

We find no abuse of discretion in the trial court's refusal to admit in evidence or judicially notice the mathematical computation offered as present worth tables.

Judgment affirmed.

PETRIE, C.J., and PEARSON, J., concur.

PETRIE, C.J. (concurring)—I agree completely with everything said by the majority; but feel compelled to comment upon the use of mathematical tables in the expectation of introducing a measure of objectivity into the trial of a lawsuit. Great care must be taken lest a misuse, rather than an appropriate use, of such tables causes a totally unwarranted result.

In the case at bar, defendant has asked the court to admit as an exhibit—available to the jury—a table designated "Present Value of $1" assuming selected anticipated percentages of interest earnings ranging from 4 per cent to 8 per cent, for periods of time ranging from 1 to 50 years. The more complete title of the specific table offered is "Present Value of $1 *To Be Received At End Of Specified Time.*" (Italics mine.) *See* Am. Jur. 2d Desk Book, Doc. No. 132 (1962). Such a table is totally unsuitable to determine

damages for loss of future earnings, because the table assumes that the present award is for a loss which would not have occurred until the end of the time period used in the calculation. The appropriate table would have been "Present Value Of An *Annuity* of $1 Payable At End Of Specified Time Intervals [weekly, monthly or annually] For A Specified Number Of Years." (Italics mine.)

A hypothetical example will illustrate the error. Assume the jury determined that a plaintiff sustained a loss of earning power of $500 per month over a work expectancy of 12 years; and that any present award to replace that loss could reasonably be invested at 6 per cent per annum. Defendant's proposed table contemplates that the jury would convert $72,000 ($500 x 12 x 12) to its present value by applying a factor of 0.49697. The award, thus calculated, would be slightly less than $36,000. On the other hand, even if the annuity were paid annually at $6,000 per year, the present value of such an annuity, payable for each of the next 12 years with the remaining principal invested at 6 per cent per annum, would be slightly more than $53,000. *See* Am. Jur. 2d Desk Book, Doc. No. 133 (1962) and Doc. No. 176.5 (Supp. 1970). The disparity caused by use of the wrong table is substantial. The reason for expert guidance in the selectivity of the appropriate table and its proper use is evident.