[No. 42195.     En Banc.     October 19, 1972.]

LEE ANN HINZMAN, *as Administratrix, et al., Respondents,* v. GENE A. PALMANTEER *et al., Appellants.*

*Jones, Read & Church, Dale W. Read, Skeel, McKelvy, Henke, Evenson & Betts,* and *F. V. Betts,* for appellants.

*John L. La Londe* (of *Boettcher, La Londe, Kleweno, Lodge & Ladley*), for respondents.

UTTER, J.—Lauretta Lee Hinzman, 7, died from injuries sustained in an accident while riding as a passenger in a truck driven by Gene A. Palmanteer and owned by Ray Irwin. Palmanteer was an employee of Ober Logging Company. Suit was brought on behalf of the estate of Lauretta and of her parents, Mr. and Mrs. Bernard Hinzman. The jury awarded the estate $8,400 and her parents, $16,500 against all defendants.

Appellants contend that the child's parents are entitled to recovery only for loss of love and companionship and her funeral expenses, and that the jury should not have been instructed they could allow recovery for "destruction of the parent-child relationship"; that there was lack of proof to support any verdict in favor of the estate of the child; and, that the amount of recovery to the child's estate should in

no event exceed the present cash value of her net income as distinguished from gross income. We find no error and affirm the judgment of the trial court.

■ Appellants' first claim of error is directed to the cause of action brought on behalf of the parents of the deceased child and that portion of instruction No. 5 which instructed the jury that in determining the amount of recovery for that cause of action they could consider "the loss of love and companionship of their child and for the destruction of the parent-child relationship as under all the circumstances may be just."

Appellants contend that love and companionship and parent-child relationship are one and the same thing and that the jury, by this instruction, could consider them as separate and distinct items and erroneously allow damages for each. Our court has held the statutory terms "loss of love and injury to or destruction of the parent-child relationship" were intended by the legislature to add the elements of "parental grief, mental anguish and suffering" as elements of damages as well as those elements contained within the term "loss of companionship". *Wilson v. Lund,* 80 Wn.2d 91, 491 P.2d 1287 (1971). The court did not err in instructing the jury in the words of the statute.

Appellants' remaining assignments of error all are directed to the determination by the jury that damages were properly recoverable by the estate of Lauretta Hinzman.

Recovery by the estate is sought under RCW 4.20.046. Under this statute, all causes of action brought on behalf of a deceased person survive to their personal representative except no recovery is allowed for damages for "pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased." In instruction No. 5, the court instructed the jury that, in determining the amount of the recovery in this cause of action, they

shall allow such sum as general damages as in your opinion will fairly and justly compensate her estate for her wrongful death. In this regard you may take into consideration and award compensation for the shortened life

expectancy caused by her death, as well as the loss of the value of her future earning capacity caused by her wrongful death."

Appellants do not attack the award as excessive, but claim the elements considered by the jury were not specific enough to allow the jury to reach a verdict on anything but speculation and conjecture, and that the instruction allowed the jury to consider items of general damages other than shortened life expectancy and loss of future earning capacity. We do not agree.

The sentence with reference to general damages lists the only items the jury was told were a part of general damages. We do not believe a fair reading of the word "may", in this context, would allow the jury to consider anything other than the designated items.

Shortened life expectancy caused by the child's death and the resulting loss of value of her future earning capacity to her estate are specifically recognized as items of recovery not excluded by the statute. *Warner v. Mc-Caughan,* 77 Wn.2d 178, 183, 460 P.2d 272 (1969). We there noted that damages to the deceased include " 'an allowance for prospective loss of earnings during his normal life expectancy, discounted to present worth, and with such other adjustments as the facts may require.' "

These damages, in the case of a 7-year-old child, are extremely nonspecific. The courts, however, refuse to deny recovery for that reason. *Cox v. Remillard,* 237 F.2d 909 (9th Cir. 1956); *Lane v. Hatfield,* 173 Ore. 79, 143 P.2d 230 (1943). In *Cox,* the court noted

> it was impossible to furnish all of the proof of anticipated earnings and savings which might be furnished in the case of an adult, but that circumstance does not mean that no damages whatever can be recovered . . .

*Cox v. Remillard, supra* at 911. The court further indicated that, in cases of this character, it is not possible to prove damages with any approximation of certainty and the jury must estimate the damages as best they can by reasonable probabilities, based upon their sound judgment as to what

would be just and proper under all of the circumstances. The court held it to be unnecessary for a witness to name a specific sum as the precise amount of the damages suffered.

The speculative nature of the damages in this case, based on earning capacity and other facets of a life still new and unformed, is not a reason for denying such damages altogether where the life expectancy of the child was before the jury, and the ultimate assessment of damages is one a reviewing court can control. *Clark v. Icicle Irr. Dist.*, 72 Wn.2d 201, 432 P.2d 541 (1967); *Rohlfing v. Moses Akiona, Ltd.*, 45 Hawaii 373, 369 P.2d 96 (1961); *Alleva v. Porter*, 184 Pa. Super. 335, 134 A.2d 501 (1957).

Under some circumstances, not present in this case, a serious question of duplication of damages could be raised in actions brought both under RCW 4.20.046, the survival statute, and RCW 4.24.010, the wrongful death statute. As discussed extensively in *Warner v. McCaughan, supra,* there is a definite distinction between the two statutes. In the survival statute, all causes of action brought on behalf of the deceased, with certain exceptions not here applicable, survive and the injured person's claim continues after death as an asset of his estate. One of the causes of action available to the estate is the claim for permanent loss of earning power. The claim for damages under the wrongful death statute is for a new cause of action for the benefit of the decedent's heirs, or next of kin, and is premised upon the alleged wrong to the statutory beneficiaries, not the estate.

In this suit, the estate of Lauretta Hinzman claimed damages under the survival statute for general damages consisting of loss of value of her future earning capacity as affected by her shortened life expectancy caused by her death.

The parents of the deceased also sought recovery under RCW 4.24.010, the wrongful death statute, for "loss of love and companionship of the child and for injury to or destruction of the parent-child relationship . . .". As earlier indicated herein, this language provides recovery for

(1) parental grief, mental anguish and suffering, and (2) loss of companionship, defined in *Clark v. Icicle Irr. Dist., supra,* to be " 'the value of mutual society and protection.' " The parents did not seek all of the remedies available to them in the wrongful death action under RCW 4.24.010 and had they sought, as allowed by the statute, recovery for loss of "services and support" a potential improper double recovery would have been possible. The anticipated contributions from the deceased to her parents for support could include a substantial portion of what had already been collected in the survival action as prospective earnings of the decedent. Comment, *Damages in Wrongful Death and Survival Actions,* 29 Ohio St. L.J. 420, 427 (1968).

Appellants' next assignments of error concern the court's refusal to give proposed instruction No. 8 which stated if recovery is allowed "it shall be the net amount of value of her property at that time of her death." The court also refused proposed instruction No. 9 which stated that, in arriving at an amount to which the estate may be entitled, the jury should "deduct from the gross earnings reasonable income taxes, cost of living expenses, amount of gifts, expenses of entertainment, and expenses for medical attention expended during her normal life." Instructions Nos. 8 and 9 must be read together inasmuch as instruction No. 8 does not indicate to the jury what items, if any, should be considered in arriving at the net amount, while instruction No. 9 furnishes those specific items appellants contend they are to consider.

■ Three theories have been developed for measuring the lost earning capacity of a decedent. *See* 29 Ohio St. L.J. 428 (1968). (1) The probable worth of the decedent's future net earnings had he lived to his normal life expectancy. Personal expenses are deducted from gross earnings to reach the net. *Bryant v. Woodlief,* 252 N.C. 488, 114 S.E.2d 241, 81 A.L.R.2d 939 (1960); *Gonyer v. Russell,* 160 F. Supp. 537 (D.R.I. 1958) *aff'd,* 264 F.2d 761 (1st Cir. 1959). (2) The present worth of decedent's probable future savings had he lived to a normal life expectancy. Probable

personal and family expenditures are both subtracted from probable gross earnings. *Lampe v. Lagomarcino-Grupe Co.,* 251 Iowa 204, 100 N.W.2d 1 (1959); *Florida E. Coast Ry. v. Hayes,* 67 Fla. 101, 64 So. 504, 7 A.L.R. 1310 (1914). (3) The present worth of decedent's future gross earnings. No expenses are deducted from the award computed. *Western & Atl. R.R. v. Michael,* 175 Ga. 1, 165 S.E. 37 (1932); *Lexington Util. Co. v. Parker's Adm'r,* 166 Ky. 81, 178 S.W. 1173 (1915).

We believe the first theory which measures lost earning capacity by deducting personal expenses from gross earnings is the most satisfactory in this case. In an area where damages are at best conjectural, to additionally speculate on whether or not the child would eventually marry and at what age, and when to start deductions for family expenditures seems to us to foreclose use of the second-mentioned rule. We reject a gross earnings test as being an unrealistic forecast of the amount which would truly be left by the decedent at the time of death.

Most of the deductions specified in appellants' requested instruction No. 9 were arguably among those which could be denominated "personal expenses." The instruction also, however, directs the jury to deduct from the decedent's gross earnings, "reasonable income taxes." The majority of the courts considering items to be deducted from the decedent's gross income and fixing damages for destruction of his earning capacity have held that income tax on those probable future earnings should not be taken into consideration. The courts considering the question have reached their decisions on a variety of grounds. Courts so ruling have considered income tax liability or savings as (1) a matter not pertinent to the damage issue, being a matter between the plaintiff and the taxing authority and of no legal concern to the defendant; (2) that the amount of income tax which might become due on one's prospective earnings in future years is too conjectural to be considered in fixing damages; or, (3) that to introduce an income tax matter into a lawsuit for damages would be

unduly complicating and confusing. *Henninger v. Southern Pac. Co.,* 250 Cal. App. 2d 872, 59 Cal. Rptr. 76 (1967); *Hall v. Chicago & N.W. Ry.,* 5 Ill. 2d 135, 125 N.E.2d 77, 50 A.L.R.2d 661 (1955).

There has been some critical comment of this rule with the contention that fairness and accuracy demand the deduction. *Cox v. Northwest Airlines, Inc.,* 379 F.2d 893 (7th Cir. 1967); 2 F. Harper and F. James, *Torts* 1326 (1956); C. Peck and W. Hopkins, *Economics and Impaired Earning Capacity in Personal Injury Cases,* 44 Wash. L. Rev. 351 (1968). The present status, however, of those cases which present a viewpoint contrary to the majority is to hold "where the impact of income tax has a significant and substantial effect in the computation of probable future contributions [it] may not be ignored." *Cox v. Northwest Airlines, Inc., supra* at 896; *Adams v. Deur,* 173 N.W.2d 100 (Iowa 1969); *Petition of Marina Mercante Nicaraguense, S.A.,* 364 F.2d 118 (2d Cir. 1966); *Nollenberger v. United Air Lines, Inc.,* 216 F. Supp. 734 (S.D. Cal. 1963); *O'Connor v. United States,* 269 F.2d 578 (2d Cir. 1959). Courts have also reasoned that where a case is before a judge there is no problem of articulating a difficult jury instruction. *Hartz v. United States,* 415 F.2d 259 (5th Cir. 1969).

Where extremely high income is involved, injustice to a defendant from ignoring future taxes might outweigh injustice to a plaintiff from reducing an award of damages to allow for a speculative tax element. *McWeeney v. New York, N.H. & H.R.R.,* 282 F.2d 34 (2d Cir. 1960). There was no proof of extremely high prospective income in the instant case, and even if we were to depart from the majority rule, this does not present an appropriate case to do so.

■ The enumeration of income tax as an appropriate deduction in the proposed instruction was erroneous. The court is under no obligation to give an instruction which is erroneous in any respect. *Adams v. State,* 71 Wn.2d 414, 429 P.2d 109 (1967); *Robillard v. Selah-Moxee Irr. Dist.,* 54 Wn.2d 582, 343 P.2d 565 (1959). Inasmuch as instruction No. 8 is dependent on the correctness of instruction No. 9,

the court did not err in refusing proposed instruction No. 8.

■ Appellants' final assignment of error is directed to the court's failure to give their proposed instruction No. 10 dealing with discount of the award for future earnings to present cash value. Proposed instruction No. 10 reads as follows:

> As to the claim of Lee Hinzman as administratrix of the estate of Lauretta Lee Hinzman, in arriving at any amount for loss of future earnings, you must determine the present cash value of those earnings.
>
> "Present cash value" means the sum of money needed now, which, when added to what the sum may reasonably be expected to earn in the future, will equal the amount of the loss at the time in the future when the earnings would have been received.

The instruction set forth in WPI 34.02, 6 Wash. Prac. 182, based on our holding in *Kellerher v. Porter,* 29 Wn.2d 650, 189 P.2d 223 (1948), and *Wentz v. T.E. Connolly, Inc.,* 45 Wn.2d 27, 273 P.2d 485 (1954), states:

DAMAGES ARISING IN THE FUTURE—
DISCOUNT TO PRESENT CASH VALUE

> "Present cash value" as used in these instructions means the sum of money needed now, which, when added to what that sum may reasonably be expected to earn in the future, will equal the amount of the loss at the time in the future when [the expenses must be paid] [or] [the earnings would have been received] [or] [the benefits would have been received.]
>
> The rate of interest to be applied by you in making this determination should be that rate which in your judgment is reasonable under all the circumstances taking into consideration the prevailing rates of interest in the area which can reasonably be expected from safe investments which a person of ordinary prudence, but without particular financial experience or skill, can make in this locality.
>
> [Damages for [pain and suffering] [disability] [and] [disfigurement] are not reduced to present cash value.]

Our court in *Warner v. McCaughan,* 77 Wn.2d 178, 460 P.2d 272 (1969), indicated an award for prospective loss of

earnings should be " 'discounted to present worth, and with such other adjustments as the facts may require.' "

As requested, instruction No. 10, however, only defined what present cash value was and omitted the second paragraph of WPI 34.02 which would have given the jury a basis upon which to determine that value. The omission of this paragraph from the instruction, and the absence of any evidence providing a guide for the jury, left the jurors with no evidence or guide from which to determine the appropriate rate of interest to apply. This was a fatal omission, the requested instruction was therefore erroneously incomplete, and the court did not err in refusing the instruction.

Even had the instruction been given in full as set forth in WPI 34.02, additional testimony might well have been requested to establish the appropriate mathematical formula to be applied. At the time this testimony was introduced, or at such other time as deemed appropriate by the plaintiff, the plaintiff could also have produced evidence proving to what extent, if any, the reduction of future earnings to present cash value might be offset by a change in the probable reduced value of money at given periods of time in the future. *Sadler v. Wagner,* 5 Wn. App. 77, 486 P.2d 330 (1971); *Pierce v. New York Cent. R.R.,* 304 F. Supp. 44 (W.D. Mich. 1969).

Judgment affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, NEILL, STAFFORD, and WRIGHT, JJ., concur.

NEILL, J. (special concurrence)—As the question of whether income taxes should be deducted in the computation of lost earning capacity is one of first impression in this state, we are free to adopt the most rational and workable solution presented.

Few aspects of American life are more certain than taxes. An injured plaintiff who is unable to work does not lose his gross earnings. Indeed, under our system of withholding taxes, a salaried employee never receives his gross earnings. For all practical purposes, the only usable earn-

ings are net earnings after taxes. Thus, the estate which a decedent would have accumulated, but for a fatal accident, is directly affected by taxes.

The major objective of our tort law is to compensate a wrongfully injured person and thereby place him in the position in which he would have been but for the wrong. A monetary award in a personal injury action is intended to compensate the plaintiff, not to punish the defendant. As a respected commentator has noted, "If plaintiff gets, in tax-free damages, an amount on which he would have had to pay taxes if he had gotten it as wages, then plaintiff is getting more than he lost." 2 F. Harper and F. James, *The Law of Torts* § 25.12, at 1326 (1956).[1] In the absence of a countervailing consideration, then, our compensatory theory of damages requires that the measure of recovery for lost earnings be the estimated net income after taxes.

Three justifications are offered to support the view held by many jurisdictions that income taxes should not be considered in determining lost earning capacity. First, it is suggested that income tax liability is a matter not pertinent to the damage issue, being a matter between the plaintiff and the taxing authority and of no legal concern to the defendant. This statement begs the question by assuming that the award in theory correctly measures plaintiff's loss. If the award correctly measures the loss, then what plaintiff does with the amount he receives is of no concern to the defendant or the court. But, whether the method of computing that award does correctly measure plaintiff's loss is a matter of concern for both court and defendant.

A second argument for excluding income taxes from consideration is that the amount of income tax which might

[1]The question under discussion is not to be confused with the exempt status of the award itself. The Internal Revenue Code of 1954, § 104(a)(2), exempts from gross income "the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness . . .". Thus, the damage award to an injured person or his estate is not subject to taxation, even though it may include compensation for loss of estimated future earnings which would have been taxable but for the accident.

become due on one's prospective earnings in future years is too conjectural. Certainly there are speculative elements inherent in the estimation of future taxes.[2] The question here is not whether these matters are speculative, but whether they are so speculative that the defendant will not be permitted to try to show them.

The assurance of some future taxes is practically certain; and, any award for future earnings lost through wrongful death is necessarily based on guesswork, from the prognosis of life expectancy to the prediction of gross future income. Estimating future income taxes would hardly be more conjectural in the present case than predicting the future gross earnings of a 7-year-old girl during exactly the same period. While income taxes cannot be determined with mathematical certainty, the consideration of taxes would bring the measure of compensation more closely into line with the purpose of recovery—to compensate plaintiff for the loss actually suffered.

The final argument in support of the view that income taxes should be ignored is that to introduce the element into a lawsuit for damages would be unduly complicating and confusing. I do not underestimate the difficulties a jury might encounter in determining future taxes.[3] However,

---

[2] As pointed out by Professor Nordstrom: "This conjecture and speculation could be found in such things as: (1) the family status of the injured party in the years to come; (2) possible changes in the exemption and deduction provisions of the tax law; (3) possible changes in the rates of taxation; and (4) possible changes in the cost of living, thus reflecting itself on the income of the plaintiff." R. Nordstrom, *Income Taxes and Personal Injury Awards,* 19 Ohio St. L.J. 212, 227 (1958).

[3] The computation of the tax which would have become payable on income which would have been earned but for the injury or death requires prediction, or speculation, concerning future tax rates, future income from other sources, the number of dependents and the duration of their status as dependents, the number of deductions, such as charitable contributions, which might have been made, and all the other variables considered in determining the tax due on income.
C. Peck & W. Hopkins, *Economics and Impaired Earning Capacity in Personal Injury Cases,* 44 Wash. L. Rev. 351, 371-72 (1969).
The jury is faced with an even more complex problem if an

weighing the fundamental responsibility of the courts to make the closest feasible determination of the amount that will properly compensate a plaintiff against the difficulties inherent in computing taxes on lost future earnings, I would follow the rule set forth in *McWeeney v. New York, N.H. & H.R.R.*, 282 F.2d 34 (2d Cir. 1960), *cert. denied*, 364 U.S. 870 (1960).

In *McWeeney*, the Court of Appeals for the Second Circuit held that the deduction for income taxes should not be made in:

> [T]he great mass of litigation at the lower or middle reach of the income scale, where future income is fairly predictable, added exemptions or deductions drastically affect the tax and . . . the plaintiff is almost certain to be undercompensated for loss of earning power in any event [through continuing inflation and high contingent attorneys' fees].

*McWeeney v. New York, N.H. & H.R.R., supra* at 39. The court recognized, however, that in cases at the opposite end of the income spectrum, failure to deduct taxes would result in an award that would be plainly excessive even after taking full account of the countervailing factors. Thus, each case must be examined on its merits, and, where anticipated earnings are low, the problems inherent in computing future taxes might outweigh injustice to the defendant resulting from inclusion of taxes in the award. This solution presents a compromise I find more desirable than either of the extreme positions: *i.e.*, requiring the tax deduction in all cases or refusing such an instruction in any case.

In *McWeeney*, the court found McWeeney's yearly earnings of $4,800 to be on the lower end of the spectrum. Later decisions applying the *McWeeney* rule have held annual

allowance is made for the tax which will have to be paid on the income received from the investment made with the award. *See McWeeney v. New York, N.H. & H.R.R.*, 282 F.2d 34, 37 (2d Cir. 1960), *cert. denied*, 364 U.S. 870 (1960). Still another complication is added if plaintiff has outside income which continues in spite of the injury. Nordstrom, *Income Taxes and Personal Injury Awards*, 19 Ohio St. L.J. 212, at 230.

earnings of \$9,300 to \$11,500 to fall below the level at which a deduction could be made, but treated an anticipated annual income of \$16,000 to \$25,000 as sufficiently large to permit the trial court to deduct income taxes. *Petition of Marina Mercante Nicaraguense, S.A.,* 364 F.2d 118 (2d Cir. 1966), *cert. denied,* 385 U.S. 1005 (1967). *LeRoy v. Sabena Belgian World Airlines,* 344 F.2d 266 (2d Cir. 1965), *cert. denied,* 382 U.S. 878 (1965).

In following the *McWeeney* rule, the Court of Appeals for the Seventh Circuit has further defined the point at which a reduction for income tax is required as an income level "where the impact of income tax has a significant and substantial effect in the computation of probable future contributions and may not be ignored." *Cox v. Northwest Airlines, Inc.,* 379 F.2d 893 (7th Cir. 1967), *cert. denied,* 389 U.S. 1044 (1968).

Applying these guidelines to the facts before us, I agree that the trial court did not abuse its discretion in refusing to instruct the jury to deduct income taxes from gross earnings in arriving at the amount to which the estate was entitled. The decedent's prospective earnings clearly fall at the lower end of the income spectrum, as evidenced by the jury award of \$8,400. It should be noted, though, that the majority opinion expressly leaves open the question of a deduction for income taxes where prospective income is high. Where anticipated income is high, and thus corresponding income taxes would be high, I would deduct income taxes in computing lost earning capacity.

HAMILTON, C.J., and WRIGHT, J., concur with NEILL, J.

HALE, J. (concurring in part; dissenting in part)—I concur except in that part of the majority opinion which grants damages to the deceased child's estate in addition to those awarded the parents.

Now that the legislature has expressly allowed recovery for the death of a child to include "medical, hospital, medication expenses, and loss of services and support" and the "loss of love and companionship of the child and for injury

to or destruction of the parent-child relationship" (RCW 4.24.010; Laws of 1967, Ex. Sess., ch. 81, § 1, p. 1734), and by decision this court has augmented the statute to include parental grief, anxiety and mental suffering (*Wilson v. Lund*, 80 Wn.2d 91, 491 P.2d 1287 (1971)), it is time to drop the long-persisting legal fiction that, even though there has been no proof of financial loss whatever, the death of a young child or infant operates to produce a pecuniary loss to the parents.

The law rests on truth, not fiction, and a legal fiction should be employed only where there are no available alternatives to the attainment of a sensible result. While for a long time the courts countenanced a legal fiction that minor children were a financial asset rather than a liability to parents, the courts can and should now substitute truth for fiction and let go of the idea that, in losing a young child, where no proof of pecuniary loss can be shown, the grief-stricken parents, in addition to other damages, have suffered a money loss, too. The courts should abandon the questionable presumption that this loss amounts to the difference between the cost of raising the child and the amount of family income the child would produce for the family before attaining majority. That fiction, acknowledged to be such by the courts, has never been anything but a creature of the judicial imagination, one rarely supported by any evidence and indulged in by the courts only from the necessity of providing some compensation to bereaved parents for a very real injury. With the enactment of RCW 4.24.010, the need for that fiction ceased to exist; to employ it, I think, is not in furtherance of but rather a denial of justice, for it not only allows the parents to recover but it assesses the defendants duplicative damages.

The fictional rule of damages in the death of a child awarding the parents the child's net worth to them during his minority is the same kind of fiction indulged in now by the court to sustain the wholly unsupported $8,400 verdict returned for the estate here. That verdict was based on the idea that the child's *estate* suffered a pecuniary loss not

encompassed in the award to the *parents*. Thus, the former fiction of pecuniary loss to the parents has now been transmuted to the estate of the child and with no better reason in law and fact, for there was not and in the very nature of things could not be any rational proof submitted that the 7-year-old child's estate suffered any financial loss whatever. Thus, to extend that rule, as I think the court now does, so as to project a 7-year-old girl's earnings on into her life expectancy, deducting income taxes, maintenance, living expenses and encompassing all of the imponderables of life so as to reach some kind of a specific figure in dollars, amounted not only to an exercise in speculation and fantasy but to an excursion into the completely unknown. The question of reasonable certainty of proof versus exact proof as postulated now by the court does not, as I see it, enter this picture; there was no proof whatever, and indeed there could be none, that the child's estate suffered a net pecuniary loss.

Bizarre as it was, the courts applied the formerly tolerated fiction in the interest of doing right; they formulated a rule which, in the absence of any proof, allowed the jury to return a verdict founded upon the fiction that a small child, if living to a majority, would, during that interval of its minority, bring into the family more money than the costs of maintaining and educating the child. That obvious and acknowledged fiction was engendered by the statute that gave survival to an action without any apparent genuine remedy for the parents. But now the remedy available to the parents is complete—except possibly for funeral expenses—to the exclusion of the child's estate. The record here is devoid of proof that the child's estate had suffered any pecuniary loss whatever, much less one of $8,400. Thus, the widely held rule that damages need not be proved with exactitude but only with reasonable certainty, has no application whatever here and does not obviate the rule that damages must be proved with reasonable certainty, and this requires some evidence. There is nothing to support the verdict for the estate here except pure fantasy.

Cogent reasons for dropping the fiction of pecuniary damages where there is no proof of them are graphically highlighted by our opinion in *Wilson v. Lund, supra.* That decision, holding in effect that loss of companionship and destruction of the parent-child relationship (RCW 4.24.010) included parental grief, mental anguish and suffering, provided a rational and recognizable basis for a rule of damages and obviated the need for a fiction to give effect to the survival of actions statute.

*Warner v. McCaughan,* 77 Wn.2d 178, 460 P.2d 272 (1969), cited by the majority, does no more than restate a long-held principle which I think has little application here. I would read it to say that the old fiction of lost income against projected costs of maintenance is not available to the child's estate but only to the parents. There, in discussing the remedy to the parents for the death of a child who was a college senior at the time of her death and who "was financially dependent upon her parents" and who "did not contribute financially to the support of anyone," this court held that financial dependency was the basic element requisite to recovery by the parents for loss of the child's prospective earnings and, where there was no dependency, that element of damages would not be allowed. Thus, in striking the claim for damages in that case because the record showed the parents were in no way dependent upon the earnings of their adult child, the court said, at page 185:

> The statutes create the right of action and define those entitled to their benefits. The requirement of beneficiary status is express; the condition precedent to status is dependency. Plaintiffs do not meet this test.

In *Warner v. McCaughan, supra,* the court cites a valid principle from *Hudson v. Lazarus,* 217 F.2d 344, 348 (D.C. Cir. 1954). Now, in this case, I think the court misapplies the *Hudson* and *Warner* rationale. *Hudson* simply held that damages recoverable by the dependent wife for the death of a disabled man, who died as a result of the disabling injury, should include loss of earnings during his normal

life expectancy had he lived, discounted to present worth. That the deceased husband's administrator in *Hudson* could recover for all such damages, excluding pain and suffering, on behalf of the surviving wife as though the deceased had lived, does, I think, state the general rule. This, however, has little relevance to the award of damages to the estate of a 7-year-old child for loss of net pecuniary increment to her estate during her projected actuarial lifetime.

The rationale of both *Hudson* and *Warner* rests upon the idea of economic dependency. These two cases do state the general rule that the surviving dependent wife and children may recover for the wrongful death of the husband and father because they are financially dependent upon him or, as in *Pancratz v. Turon,* 3 Wn. App. 182, 473 P.2d 409 (1970), the parents may recover if they have suffered a pecuniary loss. But to extend this right of recovery to the deceased child's estate per se with no proof that the deceased child's heirs are or were in any wise dependent upon the child leads to the most absurd consequences.

If the parents survive and maintain an action for all elements of damages including grief, loss of companionship and destruction of the parent-child relationship, and medical, hospital and funeral expenses, then there are, I believe, in the absence of a proven economic dependency, no elements of damage which should be recovered by the child's estate, and an award to the estate in such cases is duplicative, giving the parents, as beneficiaries of the deceased child's estate, double damages. To allow recovery by the estate of a 7-year-old child, without a showing of economic dependency or actual pecuniary loss for diminution during the projected actuarial life of the child, gives the surviving brothers, sisters, cousins—and creditors, if any—a pecuniary stake in the child not contemplated, I think, by the survival of actions statutes. Heirs generally may not sue for such a loss. RCW 4.20.046, relating to the survival of actions by personal representatives against the tort-feasor, and RCW 4.24.010, specifically preserving the action for the death of a minor child to the surviving father and mother,

do not, in the absence of dependency or provable loss, contemplate justifying an allowance of damages to a child's collateral heirs, nor do they authorize recovery by creditors for debts not incurred. In the absence of a preexisting dependency, proved by a preponderance of the evidence, it seems to me to be both punitive and absurd to assess the defendants whatever damages the jury might say the child would, had she lived, accumulate in property and money during a normal life expectancy.

I would, therefore, affirm in all respects except the award to the estate, which I would reverse.